GENERAL MOTORS CORPORATION v MICHIGAN EMPLOYMENT
SECURITY COMMISSION

1. Unemployment Compensation—Benefits—Protest or Appeal—
    Suspense Account—Rating Account—Statutes.
    Contested unemployment compensation benefits paid prior to
    June 30 of any year but on which final disposition has not been
    made by August 31 of such year should be charged to a
    suspense account with credits issued to the appropriate employ-
    er's account; a final disposition of a protest or appeal requires
    that such benefit payments be transferred from the suspense
    account to the employer's rating account, which is the basis
    upon which employer's assessments for unemployment compen-
    sation are determined, if the final disposition allows benefits
    (MCLA 421.20a; MSA 17.521[1]).

2. Unemployment Compensation—Benefits—Immediate Payment
    of Benefits—Eligibility—Continuation of Payments—Sepa-
    ration from Employment—Statutes.
    A determination, redetermination or decision that unemployment
    benefits are due to an unemployed individual requires that
    such benefits become payable immediately and continue as long
    as he remains unemployed, is able to file claims for benefits,
    maintains his eligibility and does not obtain subsequent work
    (MCLA 421.27[a][1]; MSA 17.529[a][1]).

3. Unemployment Compensation—Application for Benefits—Rede-
    termination of Benefits—Statutes.
    A claimant or any other interested party, according to statute,
    may file an application with an office of the Michigan Employ-
    ment Security Commission for a redetermination of unemploy-
    ment benefits (MCLA 421.32[a][c]; MSA 17.534[a][c]).

4. Unemployment Compensation—Application for Benefits—Eli-
    gibility—Employer's Appeal—Continuation of Benefits—
    Suspense Account—Rating Account—Contribution Rates.
    Unemployment benefits commence immediately when the Michi-

References for Points in Headnotes
[1] 76 Am Jur 2d, Unemployment Compensation § 15.
[2, 4] 76 Am Jur 2d, Unemployment Compensation § 32.
[3] 76 Am Jur 2d, Unemployment Compensation §§ 91, 92.
[5] 73 Am Jur 2d, Statutes §§ 272–276.

gan Employment Security Commission finds an applicant eligible for benefits; thereafter, the employer may appeal the award but benefit payments continue uninterrupted; accrued charges for contested benefits paid on or prior to June 30 of any year but without a final decision on the protest or appeal until August 31 of such year are placed in a suspense account and it is only upon final disposition of the contest that an addition will be made to the employer's rating account thereby affecting his contribution rate for that year.

5. Statutes—Construction—Intention of Legislature—Court's Responsibility—Liberal Construction—Suppression of Mischief—Correction of Defects.

The primary rule governing the interpretation of statutes is to ascertain and give effect to the intention of the Legislature; it is the responsibility of the courts to discern the legislative intent where it is not expressly stated, to construe statutes liberally for the advancement of the remedy and suppression of the mischief against which they are directed and to give amending legislation liberal construction so as to correct defects in previous statutes.

Appeal from Ingham, Michael G. Harrison, J. Submitted March 8, 1978, at Detroit. (Docket No. 77-2413.) Decided March 20, 1978.

Petition by General Motors Corporation to the Michigan Employment Security Commission Appeal Board for removal of certain contested unemployment benefit funds on deposit with the state as required by statute from a rate charging account to a non-rate charging suspense account. Petition denied. General Motors appealed to circuit court. Reversed. The Security Commission appeals. Affirmed.

*Otis M. Smith,* General Counsel and *Eugene L. Hartwig, J. R. Wheatley, Louis H. Lindeman, Jr., Wallett B. Rogers, Wendell B. Rogers* and *M. Alice McCann,* of counsel (by *Michael J. Connolly),* for General Motors Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for defendant.

Before: R. B. BURNS, P. J., and BRONSON and D. F. WALSH, JJ.

R. B. BURNS, P. J. This appeal involves the interpretation of the Michigan Employment Security Act, MCLA 421.1 *et seq.;* MSA 17.501 *et seq.*

I do not think I can improve on the opinion written by the Circuit Judge, Michael G. Harrison, and we hereby adopt his opinion.

"This matter is brought as an appeal by Plaintiff, General Motors Corporation (GM), from a decision of the Appeal Board (Board) of Defendant Michigan Employment Security Commission (MESC).

"At issue is the applicability of 1971 PA 231, § [1] [MCLA 421.20a; MSA 17.521(1)] which became effective January 3, 1972, to certain contested unemployment benefits chargeable to GM. These benefits, totaling $1,571,647.00, were paid between 1968 and 1971 and appropriate appeals taken with respect thereto. All payments at issue were made prior to June 30, 1972, and not finally adjudicated as of August 31, 1972.

"GM maintains that the provisions of 1971 PA 231, § [1], should be applied to these contested benefits. The Board, in its decision of May 6, 1975, liability appeal No. L73-2434-1435, concluded to the contrary. If GM's contention is correct, the above sum would be placed in the 'suspense account' created by 1971 PA 231, § [1], rather than GM's 'rating account.' The rating account, created by 1971 PA 231 [MCLA 421.20(a); MSA 17.521(1)] is the basis upon which employer assessments for unemployment compensation are determined. The effect is a substantial reduction in GM's 1973 unemployment compensation assessment.

"The Board's decision rests on the theory that subsection 20(a) [MCLA 421.20(a); MSA 17.521(a)] controlled all benefit payments up until the effective date of

section 20a [MCLA 421.20a; MSA 17.521(1)]. The Board concluded that to decide otherwise would amount to retroactive application of [s]ection 20a without a clear indication of such legislative intent. This lack of intent, according to the Board, was demonstrated through the Legislature's failure to modify or repeal subsection 20(a), when 1971 PA 231 was enacted.

"The Court concludes that the benefit payments at issue in this matter should be charged to the section 20a suspense account for the calculation of GM's 1973 contribution rate rather than the subsection 20(a) rating account. The basis of this decision rests on the operation of Michigan law prior to *California Department of Human Resources [Development] v Java,* 402 US 121; 91 S Ct 1347; 28 L Ed 2d 666 (1971) and the legislative response to that decision. The Court is of the opinion that the intent of the Legislature requires full application of section 20a to all contested benefits as of June 30, 1972.

"Prior to *Java, supra,* the statutory scheme as to the calculation of an employer's contribution rate substantially revolved around subsections 20(a) and 32(c) [MCLA 421.32(c); MSA 17.534(c)]. Subsection 20(a) provided for paid benefit charges against the contributing employer's rating account in the quarter paid and the procedure to be applied when these charges were determined by MESC to have been improperly levied. That subsection read:

" 'Benefits paid shall be charged against the employer's rating account as of the quarter in which such payments are made. If the [c]ommission determines that any benefits paid and charged against an employer's rating account were improperly paid, an amount equal to the charge based on such benefits shall be credited to the employer's rating account and correspondingly charged to the solvency account as to the current period or, in the discretion of the [c]ommission, the credit to the employer's rating account may be made as of the date of the charge. Any such benefits paid to an individual as a result of an employer's failure to provide the [c]ommission with separation, employment and wage data as required by Section 32 shall be considered as benefits properly paid to the

extent that such benefits are chargeable to such non-complying employer.' [MCLA 421.20(a); MSA 17.521(a)].

"Subsection 32(c) provided:

" 'The claimant or any other interested party may file an application with [an] office of the [c]ommission for a redetermination in accordance with the provisions of [s]ection 32a * * * . *In the event that such an application for redetermination is filed, [the] payment of benefits * * * shall be withheld pending the [final] disposition of such matter on redetermination or [o]n appeal therefrom.'* (Emphasis added) [MCLA 421.32(c); MSA 17.534(c)].

"The last sentence of subsection 32(c) was of particular significance as it protected the employer against inflated charges made upon the rating account by suspending payment of benefits in instances where the employer challenged MESC determinations. So long as no benefits were being paid, no additions were made to the rating account as provided for in subsection 20(a). Consequently, the employer's contribution rate for any year reflected only those payments which were finally determined. Subsections 20(a) and 32(c) were not to be read independently of one another, but in concert and served a specific function.

"In *Java, supra,* the California statute providing for a stay in payments pending appeal, similar to subsection 32(c), was successfully challenged on the ground that the statute violated § 303(a)(1) of the Federal Social Security Act, in that it failed to deliver unemployment benefits into the hands of the unemployed 'when due.' The United States Supreme Court ruled that benefits must commence immediately following any affirmative determination of eligibility so long as both the employer and employee had the opportunity to participate in the determination. *Java* was limited to the issue of the commencement of payments and did not address the means of calculating the contribution made by the employer. The result was that the last sentence of subsection 32(c) was clearly contrary to § 303(a)(1) of the Social Security Act. Michigan law was thus left with an unenforceable provision which had served as the employer's safeguard against excessive contribution charges on the employer's rating account.

"The Michigan Legislature responded immediately with the passage of 1971 PA 231 which, among other provisions, included the addition to 1936 PA 1 (ex sess) of section 20a and subsection 27(a)(1) and the repeal of the last sentence of subsection 32(c).

"The added section 20a read:

" 'Benefits paid on or prior to June 30 of any year, under a determination, redetermination or decision which is the subject of timely protest or appeal under this act, on which final disposition has not been made by August 31 of such year, shall be charged to a suspense account within the fund as of the immediately preceding June 30 and credits issued to the appropriate employer's account as of that date. As of the date of final disposition of the protest or appeal, such benefit payments shall be transferred from the suspense account as a charge to the appropriate employer's rating account if the final disposition allows benefits, or otherwise to the solvency account as benefit overpayments. [MCLA 421.20a; MSA 17.521(1)]'

"The new subsection 27(a)(1) provided:

" 'When[ever] a determination, redetermination, or decision is made that benefits are due an unemployed individual, [such] benefits shall immediately become payable from the fund, and continue to be payable to the unemployed individual, subject to the limitations imposed by his monetary entitlement, as long as he continues to be unemployed and to file claims for benefits, until [: (i)] the determination, redetermination or decision is reversed, [or (ii)] a determination, redetermination [or decision] on a new issue holding the individual disqualified or ineligible is made, or [iii] a new separation issue arises resulting from subsequent work. [MCLA 421.27(a)(1); MSA 17.529(a)(1)]'

"Subsection 32(c), as revised, read:

" 'The claimant or any other interested party may file an application with an office of the [c]ommission for a redetermination in accordance with the provisions of [s]ection 32a. [MCLA 421.32(c); MSA 17.534(c)]'

"Under the revised statutory scheme the procedure and sequence of events became as follows: The employee applies for benefits with MESC and an initial

determination of eligibility is made pursuant to subsection 32(a). If it is found that the applicant is eligible, subsection 27(a)(1) provides that the benefit payments commence immediately. Subsection 32(c) allows the employer to take an appeal from the determination made pursuant to subsection 32a, but benefit payments continue uninterrupted. This brings into operation section 20a which established the suspense account in which accrued charges for contested benefits 'paid on or prior to June 30 of any year' have been paid but 'which final disposition has not been made by August 31 of such year.' Only upon final disposition of the particular matter in favor of the employee will an addition be made to the employer's rating account, thereby affecting his contribution rate for that year. The effect of an appeal, therefore, is to place the rating account in the identical posture it had under pre *Java* subsection 32(c). By use of the suspense account technique, the substance of the law remained unchanged with regard to a pending appeal.

"In *General Motors Corporation v Unemployment Compensation Commission,* 321 Mich 724, 727; 34 NW2d 497 [, 498] (1948), the Supreme Court stated:

" ' The primary rule governing the interpretation of statutes is to ascertain and give effect to the intention of the [l]egislature.'

Clearly, legislative intent is not always expressly stated. It then becomes the responsibility of the courts to discern such intent. It is apparent to the Court that in the instant situation the legislative intent was manifested in its expeditious reaction to *Java* by passage of the amendatory provisions for contested benefits. This evidences an intent to maintain to the greatest degree possible a system of unemployment compensation whereby an employer is taxed only on those benefits finally determined to be properly charged to the employer. In *People v Gould,* 237 Mich 156, 163; 211 NW 346 [348] (1926), the Michigan Supreme Court stated:

" 'It is an old and well recognized rule that, when omissions, defects or imperfections in a previously existing law have been supplied or corrected in subsequent legislation, they should be liberally construed for the

advancement of the remedy and suppression of the mischief against which they are directed.'

The Michigan Court of Appeals recently reiterated this rule in *[The E. F. MacDonald Co v Department of] Treasury,* 62 Mich App [626, 632]; 233 NW2d 678 [682] (1975):

" '[I]t is a rule of statutory construction that amending legislation should be liberally construed so as to correct defects in previous statutes.'

"MESC contends that subsection 20(a) and section 20a are mutually [ex]clusive and that subsection 20(a) is applicable only up until *the effective date of section 20a,* January 3, 1972. It is the opinion of the Court, however, that this is not the reason subsection 20(a) was not repealed or modified by 1971 PA 231 as maintained by MESC. Each provision serves a distinct purpose. Subsection 20(a) provides for the charging of the rating account in the quarter paid so long as charges are attributable to that account, i.e., where no appeal is pending. Section 20a provides for the establishment and charging of such benefits upon final disposition.

"A patent inequity will result if section 20a is not applied to the payments in issue. GM does not seek to have its prior year's contribution rates recalculated. Rather it seeks to have its 1973 contribution rate calculated under the statutory provisions in effect for the year 1973. Section 20a provides that' [b]enefits paid on or prior to June 30 *of any year,* under a determination, redetermination or decision which is the subject of timely protest or appeal under this act, on which final disposition has not been made by August 31 of such year, shall be charged to a suspense account * * * .' As of June 30, 1972, $1,571,647.00 in benefits had been paid chargeable to GM, for which as of August 31, 1972, there had not been a final disposition. Such payments clearly fit into a liberal construction of section 20a.

"The Court concludes that the 1973 contribution of GM should be calculated only as to those charges not under appeal as of June 30, 1972, and not finally decided as of August 31, 1972.

"Appropriate adjustments shall be made for subsequent years."

Affirmed. No costs, a public question involved.