153 Mich. App. 670 (1986)
396 N.W.2d 494
In re MAHONEY TRUST
OUDSEMA
v.
McNALLY
Docket No. 81699.
Michigan Court of Appeals.
Decided August 4, 1986.
William R. Oudsema, for plaintiffs.
Howard & Howard Attorneys, P.C. (by John W. Allen and Joseph B. Hemker), for defendants.
Before: DANHOF, C.J., and MacKENZIE and J.L. BANKS,[*] JJ.
MacKENZIE, J.
Plaintiffs appeal as of right from *672 an order of the probate court granting defendants' motion for summary judgment. We conclude that the probate court lacked jurisdiction to consider the parties' claims, and accordingly we reverse.
The C.L. Mahoney Company was incorporated in 1950. The company's officers, board of directors, and sole shareholders consisted of Clarence L. Mahoney, his son defendant James Mahoney, his son-in-law plaintiff Robert Oudsema, and his son-in-law defendant George McNally. Defendant Ruth Mahoney, Clarence's wife, also served as a director.
Clarence Mahoney died in 1953. His will provided for the placement in trust of his stock holdings in the C.L. Mahoney Company, with the income to be paid to Ruth. Upon the death of Ruth, who is apparently still alive, the trust was to be terminated and the stock distributed to defendant James Mahoney, defendants McNally, and plaintiffs Oudsema in one-third shares. The Mahoney trust was duly created and Ruth and James Mahoney were named as trustees.
In January, 1955, plaintiff Robert Oudsema resigned as board member and officer of the C.L. Mahoney Company after his proposal of corporate reorganization was unanimously rejected by the company's board of directors. In conjunction with the resignation, on January 22, 1955, plaintiffs and the McNallys and James Mahoney (hereinafter defendants) entered into a stock/corpus purchase agreement. This agreement provided in part that plaintiffs would sell to defendants all of the C.L. Mahoney Company stock they then owned; that transaction was subsequently completed without problem. Plaintiffs also agreed to sell to defendants for $33,150 their one-third remainder interest in the stock held in trust. It is this portion of the 1955 purchase agreement which is central to *673 the instant dispute. Paragraph 5 of the agreement provided that the agreement would "be binding upon [plaintiffs] during the life of Ruth M. Mahoney ... and for one year thereafter, that is, one year after the death of said Ruth M. Mahoney." Paragraph 6 stated that defendants "agree to pay [plaintiffs] for said interest in said Trust as soon as it is possible for [defendants] to pay the said purchase price to [plaintiffs]." According to defendants, after Oudsema's resignation, he went on to form his own company in competition with the C.L. Mahoney Company.
The parties offer distinctly different versions of events between January, 1955, and June, 1983. Defendants claim that they unsuccessfully sought to purchase plaintiffs' remainder interest in the stock held in trust on at least seven occasions, beginning in the early 1960's; plaintiffs deny any such tender. Plaintiffs claim that they unsuccessfully demanded payment for their interest in the stock; defendants deny such demands. In any event, in October, 1973, the trustees of the Mahoney trust filed in the probate court a first annual account regarding the trust. Similar accounts, covering a period ending October, 1983, were filed annually.
In 1974, defendants assigned their interest in the 1955 purchase agreement to the C.L. Mahoney Company. In June, 1983, the company, as assignee of the purchase agreement, tendered payment for plaintiffs' remainder interest in the stock. Plaintiffs refused the tender, claiming that the 1955 agreement was unenforceable. In September, 1983, the company again tendered payment to plaintiffs. Upon this tender, the trustees of the Mahoney trust issued a declaration that the company had become the owner of plaintiffs' remainder interest in the stock held in trust and that plaintiffs had *674 no further interest or ownership in the stock. Plaintiffs refused the tender, and then refused yet another tender in late October, 1983.
On December 9, 1983, plaintiffs filed in circuit court a complaint seeking (1) a declaration that the 1955 purchase agreement was null and void, and (2) an injunction against any transfer of their interest in the stock. Plaintiffs alleged that defendants had materially breached the 1955 purchase agreement by failing to make payment "as soon as possible."
On February 2, 1984, a notice of hearing was filed in the probate court for the allowance of the first through eleventh annual accounts of the Mahoney trust. Plaintiffs filed objections to the allowance of the accounts alleging several deficiencies therein. Additionally, plaintiffs repeated their assertion that defendants materially breached the 1955 purchase agreement by not making payment "as soon as it is possible" and noted that plaintiffs had filed a declaratory action against defendants in circuit court. In April, 1984, plaintiffs' circuit court action was removed to the probate court on defendants' motion. This Court denied plaintiffs' application for interlocutory appeal.
In the probate court, plaintiffs and defendants both moved for summary judgment. Plaintiffs' position was again that the 1955 purchase agreement was no longer enforceable, since defendants had materially breached the agreement by not tendering payment "as soon as possible" as required by paragraph 6, and plaintiffs asserted that they were entitled to rescission. Defendants, on the other hand, argued that, since they had timely tendered payment within the lifetime of Ruth Mahoney as required by paragraph 5 of the agreement, no material breach which would void the contract had occurred. Defendants urged the probate court *675 to declare that they were entitled to pay plaintiffs for their remainder interest in the stock held in trust at any time until the death of Ruth Mahoney or as soon as possible thereafter, not to exceed one year, and to dismiss both plaintiffs' circuit court action and their objections to the accountings.
The probate court granted defendants' motion and denied plaintiffs' motion. The court found that the 1955 purchase agreement unambiguously provided that defendants could tender payment for plaintiffs' remainder interest in the stock held in trust no later than one year after Ruth Mahoney's death, so that tender was timely made and wrongfully rejected. The court therefore ruled that defendants could renew their tender and "[d]elivery of the same shall terminate any suit or title present or future of [plaintiffs] in the stock held in Trust by the Trustees." The court concluded by noting that this resolution made it unnecessary to address plaintiffs' objections to the annual accounts "as they are deemed not to be parties in interest."
The probate court essentially declared that defendants have the right to specific performance of the 1955 purchase agreement. This declaration was based on the court's finding that the agreement was still binding upon the parties and that plaintiffs could not, consistent with that agreement, refuse tender. We conclude that the probate court lacked jurisdiction so to declare.
Const 1963, art 6, § 15, provides that the probate court's jurisdiction, powers, and duties shall be provided by law. The jurisdiction and power of the probate court is set forth in MCL 600.841; MSA 27A.841, which provides in pertinent part that the court has jurisdiction "as conferred upon it under the revised probate code." MCL 600.841(a). Section 21 of the Revised Probate Code, MCL 700.21; MSA *676 27.5021, vests the probate court with exclusive jurisdiction of:
(c) Proceedings concerning the internal affairs of trusts including proceedings concerning the administration and distribution of trusts and the declaration of rights or the determination of other matters involving trustees and beneficiaries of trusts, including proceedings to:
* * *
(iv) Ascertain beneficiaries.
Thus, we must decide whether the instant action constituted a "proceeding to ascertain beneficiaries" of the Mahoney trust. We conclude that it did not. On these facts, it is clear that there was no need to ascertain the trust's beneficiaries; one of the few things the parties agree upon is that, under the trust documents, plaintiffs still hold a remainder interest in the stock presently held in trust. Plaintiffs are, and will continue to be, beneficiaries of the trust until such time as they transfer their interest. Whether the 1955 purchase agreement grants defendants the right to insist upon such a transfer is a wholly different question. Although, as defendants assert, the dispute below involved "the declaration of rights ... involving... beneficiaries of trusts," the simple fact remains that the parties' concern in the probate court was not their rights under the trust, but rather their rights under the 1955 purchase agreement. MCL 700.21 does not give the probate court general jurisdiction to resolve issues of contract rights.
Having determined that the probate court lacked exclusive jurisdiction to resolve the parties' claims, we must next decide whether the court had concurrent jurisdiction to do so. Concurrent jurisdiction *677 is vested in the probate court by MCL 700.22; MSA 27.5022, which provides in pertinent part as follows:
(1) Except where exclusive jurisdiction is given in the state constitution of 1963 or by statute to some other court, or where the probate court is denied jurisdiction by the constitution or statutes of this state, in addition to the jurisdiction conferred by [MCL 700.21] and other laws, the probate court has concurrent jurisdiction of any of the following when ancillary to the settlement of an estate of a decedent, ward, or trust:
(a) To determine the validity of and resolve claims involving title to real and personal property.
Thus, in applying the above provision to the instant case, the question becomes whether the parties' claims involve a determination of title to personal property "ancillary to the settlement of a ... trust." Again, the question must be answered in the negative. When stripped to its essentials, this is not a case involving the settlement of a trust. Moreover, this case is not in the nature of an action to quiet title. A brief review of the facts, the arguments of the parties in the probate court, and the relief sought below, make it readily apparent that this is no more than a simple contract dispute. We acknowledge that the subject matter of the contract at issue is a remainder interest in stock presently held in trust. Nevertheless, probate courts do not become courts of general jurisdiction just because an estate is involved. In re Kus Estate, 136 Mich App 343, 347; 356 NW2d 23 (1984).
In Van Etten v Manufacturer's National Bank of Detroit, 119 Mich App 277; 326 NW2d 479 (1982), this Court held that the probate court does *678 not have equitable jurisdiction to entertain an action to reform a trust corpus purchase agreement. Although the instant case does not involve the reformation of the purchase agreement, it is otherwise analogous to Van Etten. Both cases involve remaindermen of a trust who sold their interests in the trust corpus by way of a corpus purchase agreement and later sought to nullify the contract. In Van Etten, the plaintiff sought to nullify the contract on the ground of mutual mistake, whereas in this case plaintiffs seek to have the contract declared null and void because of defendants' alleged breach of a material provision of the contract.
As the Van Etten Court stated, the Legislature has not provided the probate court with general equity jurisdiction. This Court will not be bound by a party's choice of labels for its action where to do so would put form over substance. See, e.g., St Paul Fire & Marine Ins Co v Littky, 60 Mich App 375; 230 NW2d 440 (1975). In the present case, there can be no denying the fact that defendants' ultimate goal is specific performance of the contract, that is, to require plaintiffs to accept payment for the trust stock and give up all rights to the stock. Plaintiffs, on the other hand, want to declare the contract null and void and seek rescission. As in Van Etten, the proper forum for such claims is the circuit court, and not the probate court. We therefore vacate the order of the probate court and remand for transfer of the parties' claims to the circuit court.
Vacated and remanded. No costs. We do not retain jurisdiction.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.