NOBLE v McNERNEY

Docket No. 86634. Submitted December 4, 1986, at Detroit. Decided
    January 19, 1988. Leave to appeal applied for.

    Julie McNerney Noble, personal representative of the estate of
        William J. McNerney, deceased, brought an action in the
        Wayne County Probate Court against Zella McNerney, the
        decedent's wife at his death, to recover the proceeds of a life
        insurance policy and a credit union account allegedly obtained
        by defendant at a result of undue influence. Defendant counter-
        claimed, seeking funeral expenses, a widow's allowance, a
        homestead allowance and a determination that she was a
        pretermitted spouse to the decedent's will. The court, Paul R.
        Mahinske, J., found that defendant had obtained the proceeds
        of the life insurance policy and credit union account by undue
        influence and that those proceeds were estate assets. The court
        also ruled that defendant was a pretermitted spouse and was
        entitled to a homestead allowance subject to a setoff against
        her pretermitted share and to an exempt property allowance.
        The court denied plaintiff's prayer for interest from defendant
        and defendant's prayer for a widow's allowance, holding that
        the two offset. The court denied plaintiff's request that her
        attorney fees be paid from the estate corpus and that she and
        her sister be permitted to intervene individually to claim the
        proceeds of the insurance policy. Finally, the court allowed

REFERENCES

Am Jur 2d, Courts §§ 32, 104.
Am Jur 2d, Executors and Administrators §§ 486 et seq.; 500, 534-
    544.
Am Jur 2d, Equity §§ 136 et seq.
Am Jur 2d, Judgments §§ 106 et seq.
Am Jur 2d, Wills §§ 67-69.
Authority of probate court to depart from statutory schedule fixing
    amount of executor's commissions and attorneys' fees. 40 ALR4th
    1189.
Amount of attorneys' compensation in proceedings involving wills
    and administration of decedents' estates. 58 ALR3d 317.
Fiduciary's compensation on estate assets distributed in kind. 32
    ALR2d 778.

plaintiff a fiduciary fee. Plaintiff appealed and defendant cross-appealed.

The Court of Appeals *held:*

1. The probate court had jurisdiction over plaintiff's complaint.

2. The court did not err in denying defendant's motion for a judgment notwithstanding the verdict or a new trial.

3. The personal representative bears the burden of proving the reasonableness of any fee request. Plaintiff did not meet this burden and the court erred in awarding a fiduciary fee on the record.

4. The court did not err in denying plaintiff's and her sister's request to intervene individually to assert rights to the insurance proceeds since the court would be without jurisdiction to hear such a claim. The court properly held the insurance proceeds to be estate assets.

5. The court correctly denied plaintiff's request for prejudgment interest.

6. The court properly found defendant to be a pretermitted spouse and able to share in the credit union account, but erred in determining that she should share in the life insurance proceeds for, but for her undue influence, the proceeds would not have gone through the estate. The general rule is that a litigant should not be the beneficiary of his own questionable acts.

7. The court erred in ruling that a contingency fee arrangement between the estate and its attorney was improper. The court should consider the contingency fee agreement along with the other relevant factors in deciding a request for attorney fees.

Affirmed in part, reversed in part and remanded.

W. A. PORTER, J., dissented. He would hold that the probate court lacked jurisdiction over plaintiff's complaint. He agreed with the majority with regard to the setting of the fiduciary and attorney fees and the holding of the probate court with regard to defendant's status as a pretermitted spouse. He would reverse the court's holding that the life insurance proceeds and the credit union account proceeds were estate assets, because the court lacked jurisdiction to adjudicate these issues.

1. COURTS — PROBATE COURT — JURISDICTION.

The probate court has jurisdiction over an action brought by the personal representative of a decedent's estate to recover for the estate the proceeds of a life insurance policy and a savings

account which were allegedly obtained by the defendant as a result of undue influence (MCL 700.22[1][a]; MSA 27.5022[1][a]).

2. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT.

A motion for judgment notwithstanding the verdict should be denied if, viewing the facts in a light most favorable to the nonmoving party, reasonable persons could differ.

3. EXECUTORS AND ADMINISTRATORS — FIDUCIARY FEES — BURDEN OF PROOF — APPEAL.

A personal representative is entitled to reasonable compensation for necessary services rendered on behalf of the estate; the personal representative bears the burden of proving the reasonableness of the requested fee and the Court of Appeals will not reverse a probate court's decision setting a personal representative's compensation absent an abuse of discretion.

4. JUDGMENTS — INTEREST — PREJUDGMENT INTEREST — EXECUTORS AND ADMINISTRATORS.

Prejudgment interest may not be awarded to an estate in an action brought by it to recover assets (MCL 700.767; MSA 27.5767).

5. WILLS — PRETERMITTED SPOUSES — TRANSFERS IN LIEU OF A TESTAMENTARY PROVISION — EVIDENCE.

A showing that a husband and wife agreed to make no testamentary provision for the other cannot be construed as a showing that any transfers which were subsequently made were with an intent that they be in lieu of a testamentary provision (MCL 700.126; MSA 27.5126).

6. EQUITY — LITIGANT'S ACTS.

The general rule is that a litigant should not be the beneficiary of his own questionable acts.

7. DEATH — ATTORNEY FEES — CONTINGENT FEES.

It is not per se unreasonable for an estate to enter into a contingent fees arrangement with an attorney, but in determining an award of attorney fees, the contingency arrangement should be only one of the factors considered along with the professional standing and experience of the attorney, the skill, time and labor involved, the amount in question, the difficulty of the case, the expenses incurred, the nature and length of the professional relationship with the client, whether other reasonable alternatives were available to the estate and whether all of the actions of the attorney were beneficial to the estate.

*Smith & Smith* (by *James L. McInerney*), for plaintiff.

*Archer, Kenney & Wilson* (by *Peter C. Kenney*), for defendant.

Before: DANHOF, C.J., and SHEPHERD and W. A. PORTER,* JJ.

DANHOF, C.J. Plaintiff appeals and defendant cross-appeals from an order of the Wayne County Probate Court entered pursuant to the settlement of an estate.

William J. McNerney died on June 25, 1979. Decedent's will, dated May 19, 1977, was admitted to probate on July 10, 1979. Julie McNerney Noble, a daughter of the decedent, was appointed personal representative. On November 18, 1981, the personal representative brought the instant action in the probate court to recover proceeds from a life insurance policy and a credit union account, allegedly obtained by defendant Zella McNerney as a result of undue influence. Defendant is decedent's second wife, whom he married on June 17, 1978, just over a year prior to his death.

On June 7, 1984, defendant filed a countercomplaint against the estate seeking funeral expenses, a widow's allowance, a homestead allowance, and a determination that she was a pretermitted spouse.

On September 5, 1984, a jury found that defendant had obtained the proceeds of the life insurance policy and the credit union account through undue influence. On March 5, 1985, the trial court issued an opinion ruling that the insurance proceeds and credit union account, totalling almost $100,000, were assets of the estate. The court also

---

* Circuit judge, sitting on the Court of Appeals by assignment.

held that defendant was a pretermitted spouse as defined by statute and that she was entitled to a homestead allowance (subject to setoff against her pretermitted share) and an exempt property allowance. The court denied plaintiff's prayer for interest from defendant on the assets she had acquired as a result of undue influence. At the same time, the court ruled that defendant was not entitled to a widow's allowance. The court ruled that plaintiff's prayer for interest was offset by defendant's claim for a widow's allowance. The trial court also denied plaintiff's request that the fees of the estate's attorney be paid from the estate corpus.

We address first the issues raised by defendant in her cross-appeal.

Defendant argues that the probate court lacks subject matter jurisdiction to entertain plaintiff's claims of undue influence. Defendant contends that such actions can only be brought in the circuit court.

Pursuant to Const 1963, art 6, § 13, the circuit court has original jurisdiction in all matters not prohibited by law. In contrast, the constitution provides that the probate court shall possess only such jurisdiction as provided by law. Const 1963, art 6, § 15.

The jurisdiction of the probate court is set forth at MCL 600.841; MSA 27A.841 and includes, inter alia, jurisdiction and power "[a]s conferred upon it under the revised probate code."

The Revised Probate Code, 1978 PA 642, MCL 700.1 *et seq.*; MSA 27.5001 *et seq.*, became effective July 1, 1979. The bill was proposed in part because of a general feeling that the prior code's procedures for probating estates were in many cases needlessly complex, resulting in unnecessary delay and expense. House Legislative Analysis, HB 4475, January 30, 1979.

The Revised Probate Code sets forth the court's jurisdiction in two sections. Section 21 delineates the areas in which the probate court has exclusive jurisdiction. Pertinent to the instant appeal is subsection (a) which provides that the probate court will have exclusive jurisdiction in

> (a) Matters relating to the settlement of the estate of a deceased person, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled without the state leaving an estate within the county to be administered. [MCL 700.21(a); MSA 27.5021(a).]

The probate court's § 21 jurisdiction is substantially similar to the court's jurisdiction under the former probate code, MCL 701.19; MSA 27.3178(19). Prior to the enactment of the Revised Probate Code, probate courts were without jurisdiction to resolve disputes involving questions of title to real and personal property. *Hilliker v Dowell,* 54 Mich App 249, 252; 220 NW2d 712 (1974); *Ashbaugh v Sinclair,* 300 Mich 673; 2 NW2d 810 (1942).

However, the enactment of the Revised Probate Code expanded the probate court's jurisdiction with the addition of § 22, MCL 700.22; MSA 27.5022. Section 22(1) provides:

> Except where exclusive jurisdiction is given in the state constitution of 1963 or by statute to some other court, or where the probate court is denied jurisdiction by the constitution or statutes of this state, in addition to the jurisdiction conferred by section 21 and other laws, the probate court has concurrent jurisdiction of any of the following when ancillary to the settlement of an estate of a decedent, ward, or trust:
> (a) To determine the validity of and resolve

claims involving title to real and personal property.

(b) To authorize partition of property.

(c) To authorize specific performance of a contract in a joint or mutual will or of a contract to leave property by will.

(d) To ascertain survivorship of parties.

(e) To bar a mentally incompetent or minor wife from her dower right, under sections 1 to 29 of chapter 66 of the Revised Statutes of 1846, as amended, being sections 558.1 to 558.29 of the Michigan Compiled Laws, in the real estate of her living husband as provided in section 2931 of Act No. 236 of the Public Acts of 1961, being section 600.2931 of the Michigan Compiled Laws.

(f) To determine cy-pres, when an estate of a trust of a decedent is involved, over gifts, grants, bequests and devises in trust or otherwise to religious, educational, charitable, or benevolent uses as provided in Act No. 280 of the Public Acts of 1915, as amended, being sections 554.351 to 554.353 of the Michigan Compiled Laws.

(g) To construe a will or determine heirs.

(h) To hear and decide an action or proceeding against distributees of an estate fiduciary to enforce liability arising because the estate was liable upon some claim or demand before distribution of the estate.

(i) To require an accounting of a fiduciary.

(j) To determine an action or proceeding of a constructive trust.

(k) To order, when requested by an interested person, any instruction or direction to a fiduciary under this act regarding this act or any applicable Michigan law affecting an estate within the jurisdiction of the court.

Subsection 4 of § 22 explains the purpose of the expansion in the probate court's jurisdiction:

(4) The underlying purpose and policy of this section is to simplify the probate of estates and the

disposition of actions or proceedings involving es-
tates of decedents, estates of wards, and trust
estates by having the probate and other related
actions or proceedings *in the probate court.* [Em-
phasis added.]

Even though the scope of the probate court's
jurisdiction was expanded by the enactment of the
Revised Probate Code, the probate court has not
become a court of general jurisdiction. *In re Kus
Estate,* 136 Mich App 343, 347; 356 NW2d 23
(1984). For the probate court to have jurisdiction,
the claim must be "ancillary to the settlement of
an estate of a decedent, ward or trust" and the
claim must fall within one of the specific catego-
ries set forth in § 22. *Van Etten v Manufacturers
National Bank of Detroit,* 119 Mich App 277, 287;
326 NW2d 479 (1982).

As noted above, prior to the enactment of the
Revised Probate Code, probate courts were without
jurisdiction to resolve disputes involving questions
of title to real and personal property. However,
MCL 700.22(1)(a); MSA 27.5022(1)(a) now provides
that probate courts possess concurrent jurisdiction
to "determine the validity of and resolve claims
involving title to real and personal property" if
"ancillary to the settlement of an estate."

Black's Law Dictionary (4th ed) defines "ancil-
lary" as: "Aiding; attendant upon: describing a
proceeding attendant upon or which aids another
proceeding considered as principal. . . . Auxiliary
or subordinate." We find that resolution of title to
the life insurance proceeds and the savings ac-
count is ancillary to the settlement of the estate.
Determining what assets are within the estate
undoubtedly is beneficial to the estate's general
administration.

Despite the apparent expansion of the probate

court's concurrent jurisdiction under § 22(1)(a), defendant argues that the probate court remains powerless to resolve "disputes regarding title of the decedent to specific assets alleged to be included in the estate." Defendant bases her contention upon the definition of "claim" in § 3(4). Section 3(4) provides:

"Claim" in respect to estates of decedents, disappeared persons, minors, and legally incapacitated persons includes liabilities of the decedent, disappeared person, or ward, whether arising in contract, in tort, or otherwise, and liabilities of the estate which arise at or before the death of the decedent, and funeral and burial expenses. *Claim does not include estate and inheritance taxes, demands, or disputes regarding title of a decedent, disappeared person, or ward to specific assets alleged to be included in the estate.* [MCL 700.3(4); MSA 27.5003(4). Emphasis added.]

For ease of reference, § 22(1)(a) is again set forth:

Except where exclusive jurisdiction is given in the state constitution of 1963 or by statute to some other court, or where the probate court is denied jurisdiction by the constitution or statutes of this state, in addition to the jurisdiction conferred by section 21 and other laws, the probate court has concurrent jurisdiction of any of the following when ancillary to the settlement of an estate of a decedent, ward, or trust:

*(a) To determine the validity of and resolve claims involving title to real and personal property.* [Emphasis added.]

Defendant asserts that when these two sections are read together, the probate court has jurisdiction to resolve title only where a claim of title is brought by a third party against the estate but not

where the claim of title is brought by the personal representative against a third party.

Subsection (1)(a) is ambiguous. It can be read in one of two ways. Claims could be the object of both infinitive phrases (to determine and [to] resolve) or it could be the object of only the latter infinitive phrase. If claims is the object of only the latter infinitive, then the probate court has concurrent jurisdiction "to determine the validity of . . . title to real and personal property" *and* "[to] resolve claims involving title to real and personal property". Under this interpretation, the probate court would have jurisdiction to hear assertions of title by the personal representative under the language empowering the probate court "to determine the validity of . . . title . . . ." Under this interpretation, the word claim is not included in this portion of the grant of jurisdiction and its definition would be irrelevant.

Defendant reads the word claim in § 22(1)(a) as being the object of both infinitive phrases. If the subsection were read in this manner, the definition of claim in § 3(4) would tend to support defendant's position. Under that section, "[c]laim does not include . . . demands, or disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate." Only the personal representative (or those on whose behalf the personal representative acts) would allege that specific assets were *included* in the estate. Third parties would allege that specific assets were *excluded* from the estate. Thus, under defendant's interpretation, third parties, but not the personal representatives, could initiate in the probate court litigation involving assertions of title to property.

We question whether the Legislature intended such a narrow interpretation as defendant advances, especially in light of the legislative pur-

pose espoused under § 22(4) to simplify the probate of estates. It is unlikely that the Legislature would have conferred jurisdiction in a section specifically addressing jurisdiction, explicitly changing prior law, and then partially withdraw such jurisdiction in a general definitional section. Nor can we discern a purpose for such a distinction. Accordingly, we find, in light of the legislative purpose expressed in the statute, that the Legislature intended that both third parties and personal representatives be permitted to litigate in the probate court disputes involving title to real and personal property.

Defendant also argues that this Court's decisions in *In re Kus Estate, supra,* and *In re Mezo Estate,* 144 Mich App 283; 375 NW2d 416 (1985), require a finding that the probate court was without jurisdiction. Defendant contends that these cases stand for the proposition that probate courts do not have equitable jurisdiction. It is defendant's premise that plaintiff's claim, which is based on undue influence, is an equitable action.

Defendant misreads *Kus Estate.* In *Kus Estate,* the personal representative sought to bring a breach of contract action on behalf of the decedent. The probate court was found to be without jurisdiction because the representative's breach of contract claim did not fall within any of the general categories set forth in § 22 to enable the exercise of concurrent jurisdiction. A similar result was reached in *In re Mahoney Trust,* 153 Mich App 670; 396 NW2d 494 (1986).

In the instant case, the dispute involves title to personal property, and thus falls within a permissible area of probate court jurisdiction. A dispute involving the proper recipient of life insurance proceeds is a dispute involving title to personal

property. *Hilliker, supra,* p 252.[1] Likewise, a dispute involving the proper recipient of a decedent's bank account is a dispute involving title to personal property. *In re Cain Estate,* 147 Mich App 615, 623; 382 NW2d 829 (1985).[2] Since the instant dispute fell within one of the general subject matter areas listed in § 22, *Kus* is readily distinguishable.

In *Mezo, supra,* a case which did involve title to property, this Court relied on the prefatory language of § 22 "except where exclusive jurisdiction is given . . . by statute to some other court" to hold that the probate court was without concurrent jurisdiction. This Court concluded that MCL 700.617; MSA 27.5617 gave exclusive jurisdiction to the circuit court to entertain suits to set aside fraudulent conveyances. The instant case does not involve a fraudulent conveyance and there is no statute giving the circuit court exclusive jurisdiction over the instant subject matter. Thus, *Mezo* also is distinguishable.[3]

[1] See also *In re Seitz Estate,* 426 Mich 630; 397 NW2d 162 (1986), where the probate court entertained a claim brought by the personal representative involving the proper disposition of life insurance proceeds and the issue of jurisdiction was never raised in the Supreme Court, in this Court, or in the trial court.

[2] The precise holding in *Cain* was that the probate court had either exclusive or concurrent jurisdiction over the subject matter.

[3] Since *Mezo* is readily distinguishable, there is no need to address whether it was correctly decided. However, we note that *Mezo* has been criticized by at least one commentator:

The Court correctly cites Sec. 22(1)(a) of the concurrent jurisdictional statute as the possible basis of probate jurisdiction in this matter; to determine the validity of and resolve claims involving title to real and personal property when ancillary to the settlement of the estate. However, the Court refers to the phrase in subsection (1), "Except where exclusive jurisdiction is given . . . by statute to some other court . . . ," and then refers to Sec. 617 of the RPC, MCL 700.617; MSA 27.5617, and the words "the fiduciary *shall sue*" and apparently, equates the word "sue" as an exclusive statutory grant of jurisdiction to circuit courts of issues relating to fraudulent

Finally, we note that our decision is consistent with *In re Cain Estate, supra.*

Next, defendant argues that the trial court erred when it refused to grant her motion notwithstanding the verdict or, in the alternative, for a new trial. Defendant argues that there was no evidence that defendant "pressured, pleaded, or forced or even asked her husband to change his financial affairs . . . ."

Without detailing all the evidence on point, we note there was evidence introduced showing that decedent had a severe alcohol problem and was frequently intoxicated for long periods of time. There was testimony that defendant had admitted on an earlier occasion that she had prepared the change of beneficiary form for the life insurance policy and had had the decedent sign it. There was also testimony that, even after defendant had been substituted as beneficiary on the insurance policy and added to the bank account as a joint tenant, decedent had no recollection of the changes. Finally, the trial court found as a fact that portions of defendant's testimony were not truthful. Viewing the evidence in a light most favorable to the nonmoving party, and considering the factors nec-

conveyances. This concept was buttressed by the assertion that similar matters had previously been brought in circuit court by estate representatives. A 1925 case and a 1947 case were cited.

Unfortunately, the concurrent jurisdictional statute was enacted long after those cases. It was the writer's belief that the concurrent jurisdictional statute was enacted for the primary purpose in subsection (4) thereof to avoid what may have been necessary in 1925 or 1947.

This writer fails to perceive an exclusive grant of jurisdiction to circuit court of such matters in the statutes and fails to be persuaded by the Court's rationale! Doesn't it seem somewhat strange that a statute allegedly conferring exclusive jurisdiction to circuit courts to determine fraudulent conveyances is reposited in the Revised Probate Code? [Emphasis in original. Jack A. Vande Bunte, 5 Michigan Probate and Estate Planning Journal 18 (1985).]

essary to establish a presumption of undue influence, *In re Conant Estate,* 130 Mich App 493; 343 NW2d 593 (1983), the facts presented do not preclude judgment for the nonmoving party as a matter of law. Since the evidence was such that reasonable minds could differ, the motion for judgment notwithstanding the verdict was properly denied. *Tucker v Sandlin,* 126 Mich App 701, 704; 337 NW2d 637 (1983), lv den 419 Mich 859 (1984). Nor did the trial court abuse its discretion in denying defendant's motion for a new trial.

Defendant also argues that the fiduciary fee of $7,200 awarded plaintiff for her services as personal representative is excessive.

A personal representative is entitled to reasonable compensation for necessary services rendered on behalf of the estate. MCL 700.541; MSA 27.5541. However, the services for which he or she is compensated must have been performed on behalf of or as a benefit to the estate. The representative is not entitled to compensation for services which advanced his or her personal interest. *In re Brack Estate,* 121 Mich App 585; 329 NW2d 432 (1982). The personal representative bears the burden of proving the reasonableness of the requested fee. *In re Baird Estate,* 137 Mich App 634, 637; 357 NW2d 912 (1984). This Court will not reverse the probate court's decision setting a personal representative's compensation absent an abuse of discretion. *Id.*

In the instant case, the personal representative petitioned for a fiduciary fee citing the fact that she had been personal representative for six years and during that time she had successfully pursued the instant action resulting in an increase in the estate's assets by almost $100,000. The petition alleged:

That such pursuit required Petitioner to submit to written interrogatories from and oral deposition by counsel for said surviving spouse, 16 conferences with Petitioner's attorneys, 9 telephone conversations with her attorneys, 7 appearances in Court for hearings, and attendance and testimony at a 4½ day jury trial, in addition to uncounted hours of study of recovery options and tactics.

Upon this allegation, plaintiff requested a fee of $100 per month, or $7,200. At the hearing on plaintiff's motion for a fiduciary fee, no evidence was taken nor were the allegations of the petition further explained or detailed. The court found that plaintiff had been "frustrated" in the performance of her duties by defendant's refusal to surrender the proceeds of the insurance policy and the credit union account and that plaintiff had been to court "a number of times." Upon these factual findings, the court granted the full amount of defendant's request for a fee.

We find that the plaintiff failed to adequately demonstrate that $7,200 was reasonable compensation for her services. There was no evidence of the time spent in performing the claimed services. See *In re Kiebler Estate,* 131 Mich App 441, 444; 345 NW2d 713 (1984). Nor was there any evidence that plaintiff herself played a substantial role in the recovery of the assets. It is possible that the recovery was mostly the result of the efforts of the estate's attorney, who has also claimed a substantial fee from the estate. Also, we note that there is no indication when the claimed services were performed. After the trial court entered its opinion and found that defendant was a pretermitted spouse and therefore entitled to share in the estate, plaintiff filed a motion in an attempt to prevent the life insurance proceeds from passing through the estate. Plaintiff argued that the real-

party-in-interest rule, MCR 2.201(B)(1), entitled her and her sister to receive the proceeds of the life insurance policy directly. Any service performed by plaintiff in furtherance of this motion (which was denied) was not rendered on behalf of the estate and thus is not compensable. *Brack Estate, supra.* Accordingly, the issue of fiduciary fees is remanded to the probate court for an evidentiary hearing. We express no opinion on whether $7,200 would be reasonable. On remand, the court shall determine the effort expended by plaintiff, the value to the estate of the services performed, *In re Baird, supra,* and whether the claimed services were performed for the estate's benefit or on its behalf.

The above concludes the issues raised in defendant's cross-appeal. We now turn to issues raised in plaintiff's appeal.

First, plaintiff argues that the voiding of an insurance beneficiary change obtained as a result of undue influence reinstates the previous beneficiary designation. The trial court held that the finding of undue influence by the jury rendered the proceeds assets of the estate. The court based its holding on the fact that the action was brought by the personal representative on behalf of the estate and that the prior designated beneficiaries brought no action in any form to assert their rights in the policy.

After the probate court entered its decision, plaintiff, in her personal capacity, and her sister filed a motion to be added as named plaintiffs or in the alternative plaintiff argued for application of the real-party-in-interest rule. Plaintiff asserted that it was not necessary that she or her sister be named individually because under MCR 2.201(B)(1) a personal representative may sue without joining

the party for whose benefit the action is brought.[4] The trial court denied plaintiff's motion. Although for a slightly different reason than expressed by the trial court, we affirm the denial.

If the motion had been granted, the dispute no longer would have been an attempt by the estate to recover assets allegedly belonging to the estate but would have been transformed after the fact into a personal contest between present and prior designated beneficiaries of a life insurance policy. Such an action would not have involved matters related to the settlement of an estate, MCL 700.21(a); MSA 27.5021(a), or any matter ancillary to settlement, MCL 700.22(1); MSA 27.5022(1).

It is important to note that in making their motion, plaintiff and her sister did not seek to overturn the factual finding of undue influence. Rather, they desired to retain the *probate* court's factual finding and at the same time switch the theory under which the finding was obtained to a theory which would not have been consistent with the probate court's jurisdiction. For the sisters to have properly asserted their claim (that the voiding of an insurance beneficiary change obtained as a result of undue influence reinstates the previously designated beneficiary), a separate action would have had to have been filed in the circuit court and the issue of undue influence would have had to have been retried. We conclude that the trial court was without jurisdiction to grant the motion.

Next, plaintiff argues that the probate court erred in refusing to order defendant to pay interest to the estate for the period during which she

_____

[4] Plaintiff misconstrues the meaning and purpose of this rule. A personal representative may not sue on behalf of a person on a claim which has no relationship to the estate.

possessed the funds she had obtained through undue influence.[5]

The probate court denied plaintiff's claim of interest on two grounds. The first ground is sufficient to support the court's ruling. The court held that this Court's decision in *In re Cole Estate,* 120 Mich App 539, 549; 328 NW2d 76 (1982), precluded an award of interest. We agree.[6]

MCL 700.767; MSA 27.5767 authorizes prejudgment interest only on a claim or "counter-claim." MCL 700.3(4); MSA 27.5003(4) defines claim and limits the definition to "liabilities of the estate . . . ." The action brought by plaintiff to recover assets cannot be characterized as involving a liability of the estate and therefore is not a "claim." Since MCL 700.767; MSA 27.5767 applies only to claims and counterclaims, it appears the Legislature intended that prejudgment interest not be awarded to the estate in actions brought by it to recover assets. Our conclusion is supported by

[5] Plaintiff does not assert a claim based on the theory that defendant was unjustly enriched by her retention of the funds. Accordingly, we address only the issue of whether interest is awardable under the statute.

[6] The trial court also found that defendant was not required to pay prejudgment interest because plaintiff's claim of interest was offset by defendant's claim for a widow's allowance. Under MCL 700.287; MSA 27.5287, a trial court may in its discretion award a periodic maintenance allowance to the widow for up to one year after the death of the decedent. Defendant requested $250 per week or $13,000. Plaintiff requested prejudgment interest, pursuant to MCL 700.767; MSA 27.5767. On appeal, plaintiff asserts that, if interest is charged at twelve percent from the time defendant received possession of the funds, interest to June of 1986 would amount to $109,000. Defendant argues that even if interest should have been awarded it should be computed at six percent and charged from the date the complaint was filed (November 18, 1981), not from the date defendant received possession. Regardless of which formula is correct, the amount of prejudgment interest would have been several times the amount defendant requested as a widow's allowance. Thus, it is clear the probate court erred when it concluded that the one amount offset the other. Nor did the probate court make any findings that the $13,000 sum defendant requested was in fact reasonable and necessary for her maintenance.

the fact the prefacing language of the section reads: "Unless otherwise provided in the judgment in another court entered against the estate . . . ." This language also suggests that interest is to be awarded only in actions "against the estate."[7]

Next, plaintiff argues that the trial court erred in finding that defendant was a pretermitted spouse.

MCL 700.126; MSA 27.5126 provides:

> (1) If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate the omitted spouse would have received if the decedent did not leave a will, unless it appears from the will that the omission was intentional, or unless the testator provided for the spouse by transfers outside the will and the intent that the transfers were in lieu of a testamentary provision is shown by declarations of the testator, by the amount of the transfers, or by other evidence.

Plaintiff argues that decedent provided for defendant by a transfer outside his will and that it was the decedent's intent that the transfer be in lieu of a testamentary provision. The "transfer" to which plaintiff refers is decedent's pension, which defendant draws as decedent's survivor.

---

[7] This Court's decision in *Cole Estate, supra,* states that "arguably" MCL 600.6013; MSA 27A.6013, the general statute which provides for an award on a money judgment recovered in a civil action, could apply in situations where MCL 700.767; MSA 27.5767 is inapplicable. We disagree. We believe the Legislature intended in MCL 700.767; MSA 27.5767 to set forth all the circumstances in which prejudgment interest could be awarded in actions and proceedings in the probate court. After this Court's decision in *Cole Estate,* the Legislature amended MCL 700.767; MSA 27.5767, 1982 PA 412, effective March 30, 1983, by incorporating MCL 600.6013; MSA 27A.6013. Under the amended statute, the latter provision is utilized to determine the applicable rate of interest which may be charged. However, the amendment did not alter the restriction that interest be awarded only on claims and counterclaims.

At the time of decedent's death, he had not yet retired. He was, however, eligible to retire. At the time of his death, decedent had not elected whether to receive his pension with or without survivor's benefits. The policy of decedent's employer was that, on the death of an active employee who was eligible for retirement, the company automatically activated the pension plan and assumed that the employee would have opted for a plan with survivor's benefits. However, if the decedent had not been married at least a year prior to his death, the company assumed that no survivor's benefits would have been elected and upon death no pension benefits would be paid to anyone. Having been married to decedent slightly over one year, it was through this policy of decedent's employer that defendant received the pension benefits as decedent's survivor. Decedent took no action during the first year of his marriage to opt for survivor's benefits.[8]

While plaintiff concedes that the decedent never took any action to effect a transfer, plaintiff argues that plaintiff's "inaction was itself action." The problem with this argument is that it ignores the fact that as a result of decedent's inaction a risk was created that during the first year of marriage, in the event of decedent's death, the pension benefits would have been paid to no one. Thus, it cannot be inferred that decedent intended to transfer his pension benefits to defendant by not acting. Because decedent lived only one year and eight days after the date of his marriage to defendant, such an intent would have been effective only during the last eight days of his life.

---

[8] The testimony was unclear whether decedent could have made an election prior to retirement on the noncontributory portion of the pension. However, it was uncontroverted that he could have made such an election prior to retirement on the contributory portion.

Plaintiff points to portions of defendant's testimony and argues on this basis that a contrary result is required. Defendant testified that she had told decedent that she wanted nothing from his estate except for his pension. Defendant explained that she wished to receive the pension benefits as compensation for giving up, upon her marriage to decedent, $184 per month in alimony from her first husband. This testimony is not sufficient to disqualify defendant as a pretermitted spouse. Such an agreement does not appear to have been made "in lieu of a testamentary provision" but rather for other reasons.

Defendant also testified that she and the decedent had agreed that his assets would go to his daughters upon death and her assets to her daughters. Again, this testimony does not disqualify defendant as a pretermitted spouse. As stated in *Cole Estate, supra,* p 545, a showing that a husband and wife agreed to make no testamentary provision for the other cannot be construed as a showing that any transfers which were subsequently made were with an intent that they be "in lieu of a testamentary provision."

Accordingly, we affirm the trial court's finding that defendant is entitled to the status of a pretermitted spouse.

Next, plaintiff argues that, even if defendant was properly found to be a pretermitted spouse, the funds defendant obtained as a result of undue influence should be excluded from the estate for purposes of calculating and paying defendant's pretermitted shares and other allowances. To permit, plaintiff argues, defendant to share in funds she attempted by unlawful action to possess fully would be to condone her actions.

MCL 600.847; MSA 27A.847 provides:

In the exercise of jurisdiction vested in the probate court by law, the probate court shall have the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions.

Having found that jurisdiction exists in the instant matter, the above provision makes clear that the probate court is empowered to effect an equitable remedy. We find that the probate court erred by entering an order which permitted defendant to share as a pretermitted spouse in the proceeds of the life insurance policy. But for defendant's undue influence, the beneficiaries would not have been changed, the proceeds of the policy would not have passed through the estate, and defendant would have been unable to claim a share of such funds. We base our holding on the general equitable principle that an individual should not be allowed to profit through his or her own wrongdoing. *Christner v Anderson Nietzke Co,* 156 Mich App 330; 401 NW2d 641 (1986). However, we perceive nothing inequitable in permitting defendant to take a pretermitted share of the proceeds of the credit union account. Such proceeds would have passed through the estate regardless of her actions.

Finally, plaintiff argues that the trial court erred in refusing to approve the contingency agreement between plaintiff and the estate's attorney under which the attorney claimed a right to receive one-third of the gross amount recovered on behalf of the estate in the instant action. The trial court denied the request on the belief that it was improper for an estate to enter into a contingency agreement with an attorney.

Our review of this issue is hampered because the

trial court did not enter an order setting forth an alternate amount of attorney fees to which he found the estate's attorney was entitled.

It is not per se unreasonable for an estate to enter into a contingency arrangement. *In re L'Esperance Estate,* 131 Mich App 496, 501; 346 NW2d 578 (1984). In determining an award of attorney fees, a contingency arrangement is only one of the factors which must be considered along with the factors set forth in *Crawley v Schick,* 48 Mich App 728, 737; 211 NW2d 217 (1973). *L'Esperance, supra,* p 501. In addition to these factors, we also believe that the trial court should consider whether other reasonable alternatives were available to the estate. Also, the court should consider whether all of the actions of the estate's attorney were beneficial to the estate. *In re Humphrey Estate,* 141 Mich App 412, 441; 367 NW2d 873 (1985), lv den 423 Mich 854 (1985).

Accordingly, the probate court erred in rejecting the request for attorney fees simply on the basis that the request was pursuant to a contingent fee. On remand, the court should consider the factors noted above and enter an order adjudging the amount of fees to which the estate's attorney is entitled.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No costs, neither party having fully prevailed.

SHEPHERD, J., concurred.

W. A. PORTER, J. *(dissenting).* I must respectfully dissent from the majority opinion. The probate court did not have subject matter jurisdiction to hear and determine an action brought by the estate to recover proceeds from the life insurance

policy and the credit union account, allegedly obtained by Zella McNerney by undue influence.

The relevant statutes have been cited in the majority opinion but will be repeated here for ease of reading.

Appellant Noble, personal representative of the estate of William J. McNerney, deceased, bases her contention that the probate court had subject matter jurisdiction to hear the above upon § 22(1)(a), MCL 700.22(1)(a); MSA 27.5022(1)(a), which provides in pertinent part:

Except where exclusive jurisdiction is given in the state constitution of 1963 or by statute to some other court, or where the probate court is denied jurisdiction by the constitution or statutes of this state, in addition to the jurisdiction conferred by section 21 and other laws, the probate court has concurrent jurisdiction of any of the following when ancillary to the settlement of an estate of a decedent, ward, or trust:

(a) To determine the validity of and resolve claims involving title to real and personal property.

Appellee Zella McNerney argues that § 3(4), MCL 700.3(4); MSA 27.5003(4), excludes such litigation from the subject matter jurisdiction of the probate court when brought by an estate. The provision reads:

"Claim" in respect to estates of decedents, disappeared persons, minors, and legally incapacitated persons includes liabilities of the decedent, disappeared person, or ward, whether arising in contract, in tort, or otherwise, and liabilities of the estate which arise at or before the death of the decedent, and funeral and burial expenses. Claim does not include estate and inheritance taxes, demands or disputes regarding title of a decedent,

disappeared person, or ward to specific assets alleged to be included in the estate.

In the first sentence of § 3(4), "claim" deals with liabilities of the decedent or the estate. In the second sentence it is made clear that a "[c]laim does not include . . . disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate."

Because of the second sentence of § 3(4), the claim by the appellant estate herein to the proceeds from the life insurance policy and the credit union account, allegedly obtained by appellee through undue influence, was not within the concurrent jurisdiction of the court provided by § 22(1)(a). The estate's dispute, alleging title to the two assets, is specifically excluded from the definition of the word claim as used in § 22(1)(a), while a third party's assertion or claim to an asset of an estate is not. The third party's action to recover such assets would be an action with respect to liabilities of the decedent or the estate, therefore a claim under the first sentence of § 3(4) and not excluded under the second sentence. Such an action falls within § 22(1)(a) jurisdiction.

The Michigan Supreme Court said in *Sam v Balardo,* 411 Mich 405, 417-418; 308 NW2d 142 (1981):

In *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9; 84 NW2d 327 (1957), this Court, in quoting Justice COOLEY from the early case of *People ex rel Twitchell v Blodgett,* 13 Mich 127 (1865), reiterated the foremost rule of statutory construction:

"There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do

but to obey it. They may give a sensible and
reasonable interpretation to legislative expressions
which are obscure, but they have no right to
distort those which are clear and intelligible. The
fair and natural import of the terms employed, in
view of the subject matter of the law, is what
should govern."

The Court went on to say:

We reach the same conclusion. Once a statute
has been declared unambiguous on its face, there
is no room for further construction; legislative
intent must be gleaned from the clear and explicit
words of the statute. [411 Mich 418.]

See also *Speers v City of Hazel Park,* 131 Mich
App 457; 346 NW2d 340 (1984), and *Metropolitan
Life Ins Co v Church,* 150 Mich App 539; 389
NW2d 124 (1986).

A clear and unambiguous statute must be en-
forced by the court as written. *Bannan v City of
Saginaw,* 420 Mich 376, 390; 362 NW2d 668 (1984);
*Sam v Balardo, supra,* p 418; *Sneath v Popiolek,*
135 Mich App 17; 352 NW2d 331 (1984); *In re
Flynn,* 130 Mich App 740; 344 NW2d 352 (1983).

It is a cardinal rule of statutory interpretation
that the reviewing court is to give effect to the
intent of the Legislature. *Hiltz v Phil's Quality
Market,* 417 Mich 335; 337 NW2d 237 (1983).
Words should generally be given their ordinary
meanings. *Goethal v Kent County Supervisors,* 361
Mich 104; 104 NW2d 794 (1960). If the language of
the statute is clear, it is assumed that the Legisla-
ture intended the plainly expressed meaning, and
the statute must be enforced as written. *Hiltz,
supra,* p 343. [*Bailey v DAIIE,* 143 Mich App 223,
225; 371 NW2d 917 (1985).]

The Supreme Court noted in *Pioneer State Mu-*

*tual Ins Co v Allstate Ins Co,* 417 Mich 590, 595;
339 NW2d 470 (1983):

> "The most important rule, of course, is to dis-
> cover and give effect to the legislative intent.
>
>                    *  *  *
>
> "The next rule is to derive the legislative inten-
> tion from the actual language used in the
> statute. . . . If the language used is clear and the
> meaning of the words chosen is unambiguous, a
> common-sense reading of the provision will suffice,
> and no interpretation is necessary." *In re Certified
> Questions, Karl v Bryant Air Conditioning Co,* 416
> Mich 558, 567; 331 NW2d 456 (1982).

More specifically, the Court of Appeals in *De-
troit v Muzzin & Vincenti, Inc,* 74 Mich App 634,
639; 254 NW2d 599 (1977), lv den 400 Mich 858
(1977), stated:

> Where, as here, a statute supplies its own glos-
> sary, courts may not import any other interpreta-
> tion, but must apply the meaning of the terms as
> expressly defined.

See also *McRaild v Shepard Lincoln Mercury, Inc,*
141 Mich 406, 410; 367 NW2d 404 (1985); *Noggles
v Battle Creek Wrecking, Inc,* 153 Mich App 363,
367; 395 NW2d 322 (1986).

Even were this writer convinced, as is the major-
ity, that the Legislature had a different intent
than expressed, the result would not be changed.

> We are controlled by our quotation from Black
> on Interpretation of Laws (1st Ed.), p 36, in *People
> v Lowell,* 250 Mich 349, 359 [230 NW 202 (1930)]:
> "Even though the court should be convinced
> that some other meaning was really intended by
> the lawmaking power, and even though the literal
> interpretation should defeat the very purpose of

the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it." [*Becker v Detroit Savings Bank,* 269 Mich 432, 436; 257 NW 853 (1934).]

The duty of the courts is to interpret statutes as we find them. *Melia v Employment Security Comm,* 346 Mich 544, 561; 78 NW2d 273 (1956). A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself. *Lansing v Lansing Twp,* 356 Mich 641, 649; 97 NW2d 804 (1959). The courts may not speculate as to the probable intent of the Legislature beyond the words employed in the act. *Id.* Ordinary words are to be given their plain and ordinary meaning. *Carter Metropolitan Christian Methodist Episcopal Church v Liquor Control Comm,* 107 Mich App 22, 28; 308 NW2d 677 (1981). [*Winiecki v Wolf,* 147 Mich App 742, 744-745; 383 NW2d 119 (1985).]

Also see *In re Contempt of Stone,* 154 Mich App 121, 125; 397 NW2d 244 (1986).

Even though I am of the opinion that the statute is clear and unambiguous and therefore not subject to judicial interpretation or construction, in light of the majority's perception of ambiguity, I will apply the familiar extrinsic aids for interpretation and construction when a statute is viewed as ambiguous. The application of such aids, as will be shown, leads emphatically to the conclusion that plaintiff-appellant's action was not a claim and therefore the probate court had no jurisdiction to hear the same.

The Court of Appeals, on June 27, 1974, decided *Hilliker v Dowell,* 54 Mich App 249, 252; 220 NW2d 712 (1974), in which it held that the probate court did not have jurisdiction to determine questions of title. That case dealt with title to personal

property. The Court also cited *Ashbaugh v Sinclair,* 300 Mich 673; 2 NW2d 810 (1942), in which the Court, while dealing with real property, felt that the probate court did not have the jurisdiction to decide upon vested rights thereto.

1974 PA 249 and 296 were approved August 1, 1974, and August 18, 1974, respectively. By § 19(1)(b) of such acts, being MCL 701.19(1)(b); MSA 27.3178(19)(1)(b), the probate court first obtained jurisdiction "[t]o determine the validity of and resolve claims involving title to real and personal property when the question of title [was] ancillary to the settlement of an estate."

> Laws are assumed to be enacted by the legislative body with some knowledge of and regard to existing laws upon the same subject and decisions by the court of last resort in reference to them. [*Lenawee Co Gas & Electric Co v City of Adrian,* 209 Mich 52, 64; 176 NW 590 (1920).]

See also *People v Buckley,* 302 Mich 12, 21; 4 NW2d 448 (1942).

> It is a rule of statutory construction that amending legislation should be liberally construed so as to correct defects in previous statutes. *People v Gould,* 237 Mich 156, 163; 211 NW 346 (1926). Amended statutes should be interpreted in light of the rationale of court decisions which prompted the amendment. [Citation omitted. *The E F McDonald Co v Dep't of Treasury,* 62 Mich App 626, 632; 233 NW2d 678 (1975).]

See also *General Motors Corp v Michigan Employment Security Comm,* 82 Mich App 99, 105; 266 NW2d 470 (1978); *Brown v Shell Oil Co,* 128 Mich App 111, 114; 339 NW2d 709 (1983).

Section 19(1)(b) of 1974 PA 249 and 296 can properly be viewed as a legislative response to

*Hilliker v Dowell, supra,* and evidence of legislative intent to give the probate court jurisdiction over actions involving title to real and personal property.

Since there was no glossary or definitional section of the statute defining the word claim nor any other limitation placed on § 19(1)(b), the probate court was given jurisdiction to determine the validity of and resolve claims involving title to real and personal property. Whether or not the statute gave the probate court such jurisdiction, irrespective of whether the action was brought by or against the estate, was not answered by reference to the statute alone. However, as stated in *In re Chamberlain's Estate,* 298 Mich 278, 285; 299 NW 82 (1941):

> Where the language used has been subject to judicial interpretation, the legislature is presumed to have used particular words in the sense in which they have been interpreted.

The *Chamberlain* Court, at page 285, noted the prior judicial interpretation of the word claim:

> In *Re Quinney's Estate,* 287 Mich 329 [283 NW 599 (1939)], this court quoted with approval from *Knutsen v Krook,* 111 Minn 352 (127 NW 11 [1910]), and said:
> "The word 'claims' is 'by authorities generally construed as referring to demands of a pecuniary nature and which could have been enforced against the deceased in his lifetime.'"

Section 19(1)(b), when read in light of the existing judicial interpretation of the word claim, was limited to actions brought against the estate.

Essentially, the same jurisdictional language described above was retained in the Revised Probate

Code, 1978 PA 642, § 22(1)(a). However, the definition and, thus, limitation of what constituted a claim was added for the first time by § 3(4) of the revised code.

The addition of the restrictive definition of what constitutes a claim under § 3(4) clearly reflects a legislative intent to limit or clarify the limitation of the probate court's jurisdiction under § 22(1)(a) to an action brought against the estate, "to determine the validity of and resolve claims involving title to real and personal property."

The Legislature must have intended to change or clarify the statute by the addition of the restrictive definition of "claim." To read the statute otherwise would be to void § 3(4) and to assume that the Legislature intended nothing by its addition of the section. Such an assumption is contrary to all established rules of statutory construction.

The statute is to be construed so as to give full force and effect, if possible, to all of its parts or provisions, and to every word, sentence and section, where this can be done without destroying the sense or effect of the law. *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971); *People v Dziuba,* 139 Mich App 789, 792; 363 NW2d 33 (1984). Again, such maxim requires the Court to read claim in a manner which precludes the probate court from exercising jurisdiction over a claim involving title to real or personal property brought by the estate. If the statute is read as the majority insists, the second sentence of § 3(4) is rendered meaningless.

The majority opinion says that § 22(1) is ambiguous because " '[c]laims' could be the object of both infinitive phrases (to determine and [to] resolve) or could be the object of only the latter infinitive phrase." In addition to the reasons heretofore set forth, claims is the object of both infinitive

phrases. Claims is the object of the preposition
"of" because "involving title to real and personal
property" is a participial phrase used as an adjec-
tive modifying claims. Therefore, claims is the
only available noun to be the object of the preposi-
tion of. Since "involving title to real and personal
property" is used as an adjective, it cannot be a
noun required for the object of the preposition of.
Thus, § 22(1)(a) must be read as meaning the pro-
bate court has concurrent jurisdiction to deter-
mine the validity of claims involving title to real
and personal property and to resolve claims in-
volving title to real and personal property. Again,
since claims is the only available noun to be the
object of the preposition of, claims must be the
object of the first infinitive phrase as well as the
second. Thus, when read together with the defini-
tion of claims in § 3(4), it is clear that the estate
may not bring such an action.

The majority perceives their decision as being
consistent with *In re Cain Estate,* 147 Mich App
615, 623; 382 NW2d 829 (1985). Since *Cain, supra,*
dealt with the filing of a claim to determine title
to a disputed bank account by a third-party claim-
ant other than the personal representative of the
estate, it did not speak to the central issue of
jurisdiction when the plaintiff is the estate alleg-
ing that specific assets are included in it. The case
is not precedential support for either the majority
or this dissenting opinion.

Finally, § 22(4) of the Revised Probate Code,
which expresses a policy "to simplify the probate
of estates and the disposition of actions or proceed-
ings involving estates of decedents . . . by having
the probate and other related actions or proceed-
ings in the probate court," is not inconsistent with
the above and cannot by itself broaden the specifi-
cally defined probate court jurisdiction. The Re-

vised Probate Code does, in fact, accomplish those purposes and meet that policy. The policy language was enacted as part of the probate code at the same time the restrictive definition of claims was enacted.

I would hold that the probate court did not have jurisdiction to adjudicate the estate's action to recover proceeds from the life insurance policy and the credit union account theretofore obtained by defendant-appellee Zella McNerney.

No argument is made that the probate court did not have jurisdiction to award plaintiff a fiduciary fee for her services as personal representative. Defendant argues that the fiduciary fee of $7,200 was excessive. In light of the Court's finding above, as well as the reasons set forth in the majority opinion the amount of the fiduciary fee to be awarded must be redetermined.

I agree with the majority's opinion concerning the defendant's status as a pretermitted spouse.

I further agree with the part of the majority opinion which would preclude the defendant from sharing in the proceeds of the life insurance policy as a pretermitted spouse if a trial court determines that the life insurance policy change would not have occurred but for defendant's undue influence. Likewise, I agree with the majority opinion which allows a pretermitted spouse to share in the proceeds of the credit union account, since the same would have been an asset of the estate, because such a result would not permit defendant-appellee to profit through her wrongdoing if she is found to have obtained such assets through undue influence.

Finally, I agree that the fee of the attorney for the estate must be reestablished by an evidentiary hearing. I am of the opinion, however, that the

probate court should take into consideration its
lack of jurisdiction over the title to the assets
above-described, as well as the other factors the
majority set forth in their analysis, in making that
determination.