COWAN v. SARGENT MANUFACTURING CO.

1. PRINCIPAL AND AGENT—POWERS OF AGENT—REPRESENTATIONS OF AGENT—EFFECT.

The agent of a corporation engaged in the manufacture of reclining and folding chairs, revolving bookcases, hospital supplies, and invalid goods, who is placed in charge of its branch store, with power to sell its goods, has no authority to bind the corporation by the purchase from another of ordinary household goods, delivered to third persons, though he represents to the seller that he has authority.

2. SAME—RATIFICATION.

There is no ratification of the unauthorized act of an agent where it is not shown that any one acting for the principal knew of the act, except the agent.

Error to Muskegon; Russell, J. Submitted June 16, 1905. (Docket No. 27.)   Decided July 21, 1905.

Assumpsit by J. Fred Cowan against the Sargent Man-

ufacturing Company for goods sold and delivered. There was judgment for defendant, and plaintiff brings error. Affirmed.

*L. K. Soper*, for appellant.

*Nims, Hoyt, Erwin, Sessions & Vanderwerp*, for appellee.

MOORE, C. J. This is an action of assumpsit to recover for goods sold and delivered, to the amount of $190.05. It was commenced in justice's court, in which court the plaintiff recovered a judgment for the full amount of the claim. The case was appealed to the circuit court, and tried before the judge without a jury. He rendered a judgment in favor of the defendant. The case is brought here by writ of error.

The circuit judge made findings of fact and conclusions of law which state the questions involved in the case. They are as follows:

"1. The plaintiff is a New York manufacturer of bedroom furniture, and is assignee of the claim of S. G. Estabrook & Co., of New York, manufacturers of parlor and library furniture.

"2. The defendant is a Michigan corporation engaged in the manufacture of reclining and rolling chairs, invalid stands, revolving bookcases, and hospital supplies, at Muskegon, Michigan; having a salesroom for their goods in New York City, used as a distributing warehouse and retail store. H. E. Hughson was a salesman for the defendant, and in charge of said New York store.

"3. Said Hughson visited the store of plaintiff about October 8, 1902, in company with two lady friends, introduced himself as agent for the Sargent Manufacturing Company, and ordered three brass beds, three springs, two hair mattresses, and one mattress made over, and two pillows, for a total price of $141.25, and directed them to be, and they were, delivered to one Mrs. Beebe, in Brooklyn. This is one of the claims in suit.

"4. Prior to December 20, 1902, Hughson went to the store of S. G. Estabrook & Co., plaintiff's assignor, told them he was manager of the Sargent Manufacturing

Company's store, ordered parlor furniture delivered to a private address in Brooklyn, and on said December 20th again visited their store, and ordered a parlor chair, the price of which was $49, and which was, by his direction, delivered to a Mrs. F. L. Ingram, in Brooklyn. This is the other claim in suit.

"5. Neither plaintiff nor plaintiff's assignor had any knowledge concerning the authority of Hughson to bind the defendant by such purchases, other than his own representations, and they made no inquiry to ascertain whether he had such authority or not.

"6. Said Hughson had neither express nor implied authority to bind the defendant by the purchase of the goods in question.

"7. The fact of prior purchases of goods from plaintiff or plaintiff's assignor and the giving of checks therefor by Hughson was never known to defendant, and his acts in that regard were never in any manner ratified by it.

"From the foregoing facts the court finds the following conclusions of law:

"1. Said Hughson had no authority to bind the defendant by the purchase of the goods for the recovery of which this suit was brought.

"2. The defendant did not undertake and promise in manner and form as the plaintiff has in his declaration complained against it.

"3. The said defendant should be, and it is hereby, awarded its costs of this suit against the said plaintiff, to be taxed, and that it have execution therefor."

Amendments were proposed to these findings and conclusions, which the judge refused to make. Much of the testimony was taken by deposition in New York. Some of it was taken in open court. Upon the trial, much of it was excluded because it was not shown that Mr. Hughson had authority to make the purchases upon behalf of defendant. For the purposes of this case, and in reaching our conclusion in relation thereto, we have considered all of this testimony as though it was properly in the case. After considering it all, we have no hesitancy in saying it falls far short of showing any authority on the part of Mr. Hughson to bind the defendant for the purchases made here.

The defendant is a corporation with a manufacturing plant at Muskegon. It had a branch house in New York for the purpose of marketing the goods manufactured in the Muskegon factory. Mr. Hughson was in charge of this branch house. The stock of goods carried, and which Mr. Hughson was authorized to sell, consisted of folding chairs, revolving bookcases, hospital supplies, and invalid goods, for sick people. The Sargent Manufacturing Company did not deal in brass beds, springs, mattresses, pillows, or parlor furniture, such as armchairs. It had none of these goods in its branch house in New York. Giving the fullest force possible to the testimony offered on the part of the plaintiff, it shows that plaintiff made three sales at plaintiff's store to Hughson under the following circumstances: Hughson visited plaintiff's store in New York about October 8, 1902, in company with two lady friends, and ordered three brass beds, three springs, two hair mattresses and one mattress made over, and two pillows, for a total price of $141.25. These goods were never delivered to defendant, or in its store. It was arranged at the time Hughson ordered them that they were to be delivered to a Mrs. Beebe, in Brooklyn. Plaintiff says this was done to save cartage. These goods are part of plaintiff's claim. Mrs. Beebe paid Hughson for these goods, and he receipted for them in the name of the defendant. On May 25, 1901, Hughson ordered one iron bedstead, springs and mattress made special. These goods were delivered to Walter Cleveland, 659 Bedford avenue, Brooklyn, by direction of Hughson, and paid for by defendant's check, drawn by Hughson. On July 29, 1902, Hughson came to plaintiff's store and ordered a brass bed from stock. This was delivered at defendant's store, and was paid for on November 5, 1902, by a check signed, "Sargent Manufacturing Company, Mr. Hughson, Manager." On December 20, 1902, Estabrook & Co. sold at their place of business one armchair for $49, which was delivered at 273 Sixth street, Brooklyn, to Mrs. F. L. Ingram. The dealings were with Mr. Hughson, who

gave the directions as to place of delivery of the chair. This is the other item of plaintiff's claim.   On June 7, 1899, a five-piece parlor suit, for $82.50, was ordered by Hughson, in person, at Estabrook & Co.'s store, and was by his direction delivered to F. Morris, 959 Bedford avenue, Brooklyn; also on May 22, 1901, a parlor suit of four pieces, at $52.25, was ordered by Hughson, in person, at Estabrook & Co.'s store, and was by his direction delivered to Walter Cleveland, 659 Bedford avenue, Brooklyn. Estabrook & Co. never had any dealings with the defendant, other than those mentioned.   They satisfied themselves when they sold the first bill that Hughson was manager of the defendant, from the fact that he had "a card or something" with him.   At least, "Hughson gave them to so understand."   Their salesman who sold these goods never saw Mr. Hughson at any other time than when these three purchases were made, nor in any other place, except in their (Estabrook & Co.'s) store.  No representations were made by anybody to them, other than by Mr. Hughson himself, that he was manager of the defendant.   The last two items were paid for by checks signed the same as the others.

It is argued that, as Mr. Hughson was in charge of the New York house, plaintiff was authorized to act upon his statement that he had authority to make the purchases. The trouble with the argument is that the articles purchased were not within the scope of the business of the defendant in New York.   The business it was conducting there was the selling of articles made by it in Muskegon. It would hardly be claimed that sales to Mr. Hughson, by a jeweler, of diamonds, or, by a manufacturer, of a touring car, would bind defendant.   The principle of law is well settled that—

"The authority of a general agent is not unlimited, but must necessarily be restricted to the transactions and concerns within the scope of the business of the principal, and if he exceeds the authority the principal is not bound."

1 Am. & Eng. Enc. Law (2d Ed.), p. 990, and the many cases there cited.

See *Rice* v. *Peninsular Club*, 52 Mich. 87; *Hurley* v. *Watson*, 68 Mich. 531; *Stilwell-Bierce & Smith-Vaile Co.* v. *Paper Mill Co.*, 115 Mich. 35.

It is contended that a ratification of the acts of Hughson can be inferred from the fact that bills for the purchases hereinbefore mentioned were sent to the New York house, and were paid for with its checks. The trouble with this contention is that it is not shown that any one acting for defendant, except Hughson, knew he was purchasing in the name of the defendant articles outside of the scope of its business, and paying for them with the company funds.

Judgment is affirmed.

CARPENTER, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.