ROTHSCHILD v. SUGAR BEET PRODUCTS CO.

1. EVIDENCE—PRINCIPAL AND AGENT—ADMISSIONS.
    In the absence of evidence that the secretary and treasurer of a corporation was authorized to bind it by admissions, testimony as to statements that the secretary had made concerning the authority of another agent of the company was properly excluded.

2. SAME—SALES—AUTHORITY TO PURCHASE—ESTOPPEL.
    Evidence offered to show that a representative of defendant had authority to purchase certain advertising specialties, *held*, insufficient to present a question of fact or to show agency by estoppel.

Error to Wayne; Codd, J. Submitted January 17, 1913. (Docket No. 9.) Decided March 20, 1913.

Assumpsit in justice's court by Clarence Rothschild against the Sugar Beet Products Company for goods sold and delivered. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Affirmed.

*Cullen, Casgrain & Hanley*, for appellant.

*Geer, Williams, Martin & Butler*, for appellee.

MOORE, J. The plaintiff, Clarence Rothschild, brought suit to recover the sum of $470.52 as the assignee of the Gray Lithograph Company, J. B. Carroll, and the Sullivan Printing Works. He obtained judgment for the full amount in justice's court, and, on appeal to the circuit court, a verdict of no cause of action was directed. The case is brought here by writ of error.

In December, 1909, the plaintiff was engaged in selling advertising specialties as the representative of the above-named parties. Defendant, whose home office is in Caro, Mich., was engaged, among other things, in making a boiler cleaner called Success Boiler Compound. The defendant made an arrangement with one Cunningham to sell its goods on commission. He opened an office in Detroit.

The claim of counsel for appellant is summed up in his brief as follows:

"We contend, therefore, that the trial judge should have submitted to a jury the question whether or not the defendant has authorized Cunningham to make these purchases, or at any rate that the question should have been submitted as to whether or not they were estopped from denying this authority."

The record is not long, and the facts are not very much in dispute.

Mr. Cunningham's office was opened a little time before the orders for goods were placed. The time when they were placed is important. The Gray Lithographing order was placed on December 1, 1909; the Sullivan order about December 5, 1909; and the Carroll order on the 9th of the same month. When Mr. Cunningham opened his office, he was furnished with letter heads having printed matter as follows:

|  |  |
|---|---|
|  | New York. |
|  | Chicago. |
|  | St. Louis |
|  | Buffalo. |
| SUGAR BEET PRODUCTS CO. | Detroit. |
| Boiler Preservatives. | New Orleans. |
| Caro, Michigan, U. S. A. | Indianapolis. |
|  | Grand Rapids. |
|  | London, Eng. |
|  | Tokyo, Japan. |

Shortly thereafter Mr. Cunningham had printed on these letter heads, under the line " Caro, Michigan, U. S. A.," the following:

" Detroit Branch, 801 Breitmeyer Bldg., F. L. Cunningham, Mgr.   Phones, Main 4340, City 4340."

Mr. Cunningham also put a sign on his office door reading:

" The Sugar Beet Products Company, Success Boiler Compound, F. L. Cunningham, Manager."

Mr. Robert Montague was called by the plaintiff as a witness. Among other things he testified:

" The Sugar Beet Products Company was organized in the spring or summer of 1909, succeeding my father, H. E. French, and myself, who were the ones interested in the company at the time of its organization. Mr. French was president, my father vice-president, and I was secretary and treasurer. We were practically in the jobbing business. My father took no active part in the management of it; it being left to Mr. French and myself. The same officers continued until May, 1910. During all that time Mr. Cunningham was engaged by the defendant and

was given permission to sell our goods down here (in Detroit) on commission. I usually did business with him for the company. We made a written contract with him. I first met him about the middle of November. He was engaged to sell our goods in Wayne county. He would sell to manufacturers and any person using steam power. We usually shipped the goods directly to the person he sold to, and he took the orders in the name of the Sugar Beet Products Company, and the people would pay the Sugar Beet Products Company, and, after payment, we would pay him his commission. Shortly after being engaged (about a week or two) he opened an office in the Breitmeyer Building without consultation with us. I frequently came to Detroit on the business of the company and usually called on Cunningham. I saw him when I engaged him, which was along about the middle of November, and one time prior to the first of December, when he came to Caro. About the middle of December I first called on him at Detroit at his office and saw the sign on his door and spoke about taking it down. It was not removed by January."

He also testified that he first saw the stationery the last of November or middle of December, and he denied that Mr. Cunningham had any authority to buy for the defendant the things for which this suit is brought.

Mr. Rothschild testified in part:

"I saw Mr. Cunningham the first day of December at his office when I took an order from him for the Gray Lithograph Company. I took the Sullivan order about the 5th and the Carroll order the 9th. I did not inquire before taking these orders as to what authority Cunningham had to order goods. I did not see either of the Montagues prior to the first of January, 1910; nor had I any dealings with Cunningham before this date when he claimed to represent defendant. I wrote no letters to the defendant prior to December 9th to find out what authority Cunningham had. About the middle of January I saw Mr. (Robert) Montague in the city, and gave him a leather purse and asked him for some business. * * * I knew that Mr. Cunningham was selling the boiler compound to the trade and manufacturers, and I understood this at the time I sold the goods."

Re-direct examination:

"*Q.* What was the idea you had as to what he was doing for the company ?

"*A.* Selling boiler compound."

Mr. Langer was called as a witness. It was sought to show by him a conversation had at the Preston Inn in Detroit with Charles Montague in relation to Cunningham's connection with the defendant. This was the third week in January, and Mr. Rothschild was not present at the conversation. This testimony was excluded.

There was correspondence introduced in evidence on the part of the defendant which occurred after the 1st of January, 1910, which tends to show that the credit was extended to Mr. Cunningham and not to the defendant company.

Complaint is made as to the exclusion of the testimony of Mr. Langer. It will be noticed that there is an entire absence of testimony showing that Mr. Montague was authorized to bind by admissions the defendant company.

It also appears that the goods were sold long before this, and the conversation was not in the presence of Mr. Rothschild. We think there was no error in excluding this conversation.

The most that can be said of the case as made is that it shows Mr. Cunningham was authorized to make sales for defendant for which he was paid a commission; and it fails to show that he was authorized to incur debts for which defendant is liable; and it also fails to show such a state of affairs as estops defendant from denying liability. See 1 Am. & Eng. Enc. Law (2d Ed.), p. 990, and the many cases there cited; *Cowan* v. *Manufacturing Co.*, 141 Mich. 87 (104 N. W. 377), and cases there cited.

Judgment is affirmed.

Steere, C. J., and McAlvay, Brooke, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.