**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 2, 2004**

*In re* ESTATE OF EUGENE T.
CAPUZZI, M.D., Deceased,
_____

MICHAEL CAPUZZI and EUGENE T.
CAPUZZI, JR.,

    Petitioners-Appellants,

v                                   No. 121106

CHRISTINA FISHER,

    Respondent-Appellee.
_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

The issue presented is whether the death of the principal revokes his agent's order to transfer limited partnership shares when all necessary actions by the agent were completed before the principal's death, but the transfer was not yet completed by a third party. We hold that an agent's actions are not revoked by the death of the principal when the agent has completed all actions necessary for the transaction before the principal's death. Therefore, we reverse the decision of the Court of Appeals

and affirm the decision of the trial court granting the petitioners summary disposition.

## I. FACTS

Decedent, Eugene T. Capuzzi, M.D., owned shares in a limited partnership. Dr. Capuzzi's will divided that interest equally among his three children, Michael, Eugene Jr., and Christina. A few days before his death, Dr. Capuzzi directed Michael to transfer the limited partnership shares to his sons, Michael and Eugene, Jr., petitioners in this case. Michael was acting as Dr. Capuzzi's agent pursuant to a durable power of attorney agreement. The agreement gave Michael "full power and authority to do and perform every act and thing whatsoever requisite and necessary to be done." The transfer would eliminate Christina's interest in the limited partnership shares; Christina is the respondent in this case.

Michael contacted the limited partnership on August 10, 1998, and again on August 11, 1998, and he directed that the shares be transferred pursuant to the power of attorney and Dr. Capuzzi's wishes. Dr. Capuzzi died on August 14, 1998. On August 19, 1998, the limited partnership sent Michael a letter stating that Dr. Capuzzi's death had revoked the power of attorney and, therefore, the transfer could not be completed. During probate proceedings, petitioners objected to the shares

2

passing under the will. The probate court granted summary disposition for petitioners. The Court of Appeals reversed and remanded, holding that the transfer of the shares could not be completed because Dr. Capuzzi's death immediately revoked the power of attorney.[1] This Court granted petitioners' application for leave to appeal. 468 Mich 925 (2003).

## II. STANDARD OF REVIEW

We review de novo questions of law. *Hagerman v Gencorp Automotive*, 457 Mich 720, 727; 579 NW2d 347 (1998). Likewise, "we review de novo decisions on summary disposition motions." *American Federation of State, Co & Municipal Employees v Detroit*, 468 Mich 388, 398; 662 NW2d 695 (2003).

## III. ANALYSIS

It is a longstanding legal principle that a duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. See, e.g., *Cowan v Sargent Mfg Co*, 141 Mich 87, 91; 104 NW 377 (1905); see also 1 Restatement Agency, 2d*,* § 12, p 57. A power of attorney provides the agent with all the rights and responsibilities of the principal as outlined in the

---

[1] Unpublished opinion per curiam, issued February 15, 2002 (Docket No. 227750).

agreement. See, e.g., MCL 700.5501 *et seq.*; *Kuite v Lage*, 152 Mich 638, 640; 116 NW 467 (1908). In effect, the agent stands in the shoes of the principal.

It is also well-settled that the death of the principal revokes the authority of the agent, unless the agency is coupled with an interest. See, e.g., *Chrysler Corp v Blozic*, 267 Mich 479, 481-482; 255 NW 399 (1934); *Weaver v Richards*, 144 Mich 395, 413; 108 NW 382 (1906). Any act done by the agent after the principal dies cannot affect the estate. 3 Am Jur 2d, Agency, § 52, pp 468-469. This is true even if an agent performed some of the acts necessary in a single transaction but not all of them. 2A CJS, Agency, § 122, pp 394-395. If an agent is in the midst of a transaction when the principal dies, the transaction cannot continue, regardless of the principal's previously stated wishes.

However, when an agent has completed all necessary actions and all that is left is for a third party to act to complete the transaction, we hold that the principal's death has no effect on the validity of the transaction and does not relieve the requirement on the *third party* to act. This is because the *agent's* actions were complete at the time of the principal's death. See 2A CJS, Agency, § 109, p 386. Notably, if a third party requires additional information to confirm that the agent has the authority to

4

act or if, for example, the third party requires completion of an additional form indicating power of attorney, then the agent has obviously *not completed all actions necessary for the transaction*. If the principal dies before the agent meets the third party's requirements, then the third party is not required to follow the directive of the agent. This is because all necessary actions have not been completed by the agent before the principal dies.

When all necessary actions have been completed, just as the third party would be required to follow the directive of the principal, the third party is also required to follow the directive of the agent. See 3 Am Jur 2d, Agency, § 1, p 429 ("the agent is the representative of the principal and acts for, *in the place of*, and instead of, the principal")(emphasis added); 2A CJS, Agency, § 4, p 308 ("a person may properly appoint an agent to do the same acts and achieve the same legal consequences as if he or she had acted personally . . . ."); see also 2A CJS, Agency, § 1, p 306. Although the agent's authority to act terminates when the principal dies, actions completed before the termination no longer require the agent to exercise authority. Therefore, the principal's death does not revoke already completed actions by the agent. See 2A CJS, Agency, § 109, p 386 ("A

revocation of the agent's authority cannot retroactively affect the completed acts of the agent.").

In this case, in accord with Dr. Capuzzi's wishes[2] and acting as Dr. Capuzzi's agent pursuant to a durable power of attorney, Michael contacted the third party and directed that the shares be transferred. Just as Dr. Capuzzi had the authority to compel the third party to transfer the shares, Michael, as Dr. Capuzzi's agent, possessed the same authority. Once he ordered the third party to transfer the shares, this concluded the agent's actions that were necessary to complete the transaction. All that remained was for the third party to act. Again, in this case, the agent did all that was required to transfer the shares. The failure to transfer the shares was solely the result of the third party's delay and had nothing to do with the third party's internal procedures or concerns that the agent did not have the proper authority.

_____

[2] We note that there is no assertion that Dr. Capuzzi, from the time the agent acted to the time of the doctor's death, ever wavered in his decision to transfer. The record also contains an affidavit from decedent's wife of forty-four years averring that respondent had, for a number of years, been estranged from her father; that despite the affiant's efforts to obtain reconciliation and reunification, respondent had refused to visit her parents; and that in 1998, respondent had refused to visit her father even though he was seriously ill. The affiant continued that her husband died not wanting his daughter to receive the joint venture shares and that he also wanted to divest himself of all remaining assets to avoid probate.

6

Notably, the agent acted on behalf of the principal *before* the agent's authority was revoked by the principal's death and, thus, there was nothing precluding the third party from relying on the agent's authority. Because there was nothing prohibiting the agent from ordering the transfer when he did, that is, while the principal was still alive, there was nothing prohibiting the third party from acting pursuant to the validly given order. The third party's authority to transfer the shares does not depend on the agent's authority to act on behalf of the principal at the time of the transfer of the shares; rather, it depends on the agent's authority to act *at the time the agent ordered the shares to be transferred*. Therefore, because the agent properly exercised his authority while the principal was still alive, see 2A CJS, Agency, § 88, p 364, the third party was not excused from acting on the agent's authority.

Although MCL 700.497 has been repealed, we are aware that it was in effect at the time of the agent's order to transfer the shares. MCL 700.497(1) stated, in pertinent part, the following:

> The death of a principal who has executed a power of attorney in writing, durable or otherwise, does not revoke or terminate the agency of the attorney in fact, agent, or other person who, without actual knowledge of the death, acts in good faith under the power of attorney or agency. An action so taken, unless

7

otherwise invalid or unenforceable, binds the principal and the principal's heirs, devisees, and personal representatives.

In brief, MCL 700.497(1) stated that the death of a principal who had executed a written power of attorney did not terminate the agency of the attorney in fact, agent, or other person who acted under the power of attorney or agency in good faith without knowledge of the death. MCL 700.497(1) is not germane to this case because the principal's agent acted *before* the principal died.

Also, MCL 700.497(2) stated the following:

> In the absence of fraud, an affidavit executed by the attorney in fact or agent stating that he or she did not have, at the time of doing an act pursuant to the power of attorney, actual knowledge of the revocation or termination of the power of attorney by death, disability, or incompetence is conclusive proof of the nonrevocation or nontermination of the power at that time. If the exercise of the power requires execution and delivery of any instrument that is recordable, the affidavit when authenticated for record is likewise recordable.

This section essentially stated that an affidavit executed by the attorney in fact or agent stating that he did not have knowledge of the principal's death at the time of doing the act in question is conclusive proof of nontermination of the power at that time and the act must be enforced. Thus, if, unknown to the agent, the principal died, the agent's act must be enforced nonetheless once the agent files an affidavit. The third party could not rebut

8

such an affidavit and would have no authority or basis to refuse to carry out the agent's order. Of course, this section is not applicable to the facts of this case because when the agent completed his act the principal was still alive. And this section is not applicable to the third party because the statute only applied to the attorney in fact or agent and the third party in this case is neither. However, it is important to note that MCL 700.497(2) mandated that the actions of an agent be enforced when the agent was unaware of the principal's death at the time of the act in question; therefore, actions taken by an agent, at the principal's behest, when the principal was still *alive* are certainly enforceable. If we were to hold to the contrary, the actions of a third party could revoke the completed acts of an agent. This would circumvent the intent of the principal and allow a third party's actions to control. A third party's delay, whether intentional or not, should not be allowed to thwart the principal's wishes when the principal's agent has completed all necessary actions before the principal's death. Further, to find that an agent had the authority to order the transfer of the shares but that the third party did not have to follow the order would render the agent's authority a nullity.

We note that our decision today does not affect situations in which an agent's actions were not yet

9

complete at the time of the principal's death. Our decision only addresses situations in which an agent's actions were complete and the *only* actions remaining to be done are those of the third party. Although the principal's death revokes the agent's authority to act on behalf of the principal, it does not void the acts completed by the agent on behalf of the principal *before* the principal's death. We also note that our decision today does not preclude a third party from taking reasonable steps to ensure that an agent's order stems from a proper power of attorney. See *Cutler v Grinnell Bros*, 325 Mich 370, 376; 38 NW2d 893 (1949). However, in this case, the third party's delay was not related to any action being taken to ensure that the agent was not acting improvidently or fraudulently.

## IV. CONCLUSION

We hold that an agent's completed actions are not revoked by the death of the principal when all necessary actions have been taken by the agent before the principal's death. Accordingly, we reverse the decision of the Court of Appeals and affirm the decision of the trial court.

> Michael F. Cavanagh
> Elizabeth A. Weaver
> Marilyn Kelly
> Stephen J. Markman

10

*In re* ESTATE OF EUGENE T.
CAPUZZI, M.D., Deceased.
_____

MICHAEL CAPUZZI and EUGENE T.
CAPUZZI, JR.,

    Petitioners-Appellants,

v

CHRISTINA FISHER,                    No. 121106

    Respondent-Appellee.
_____

YOUNG, J. (*concurring*).

I concur in the result reached by the majority because I believe that the probate court appropriately determined that the contested partnership shares belonged to the decedent's sons rather the estate.  However, the majority reaches beyond the simple issue presented in this case: whether the probate court properly applied the principles of MCR 2.116(C)(10) in resolving this property dispute in favor of the decedent's sons. In reaching beyond what is essentially a simple standard of review question, the majority addresses other issues not squarely presented and blurs the distinctions between the obligations of an agent operating under a power of attorney and the obligations of

a third party responding to the direction of that agent. Consequently, I write separately to provide an alternate rationale-one that I believe will reduce the risk of unintended consequences that I suspect the majority opinion may create.

I.  Factual Background and Procedural History

At issue is a petition in the probate court to determine ownership of shares in a limited partnership that owned a horse race track. Decedent owned those shares during his lifetime.

Two years before his death, Eugene T. Capuzzi had appointed his son, Michael, to be his attorney-in-fact under a durable power of attorney. He had instructed his son to transfer various assets to his wife and to a revocable trust. In addition, he had instructed Michael to transfer his shares in the racetrack to his sons Michael Capuzzi and Eugene T. Capuzzi, Jr.

When the estate inventory was filed in probate court, the decedent's daughter, respondent Christina Fisher, noticed that the racetrack shares were not included. She petitioned the court for the return of the assets to the estate, claiming that the racetrack shares were estate assets because the racetrack company had not completed the transfer of the shares before her father died. Her brothers filed a counter-petition, requesting that the

2

probate court determine the proper ownership of the racetrack shares. Among other proofs, they submitted the affidavit of the executive manager of the limited partnership, who stated that the limited partnership's general business practice with regard to share ownership was to transfer shares upon written or telephone communication directing a transfer. The sons also introduced evidence that the decedent desired the racetrack shares to be transferred to his sons and that this desire was communicated to Michael Capuzzi before the decedent died. It is not contested that the transfer order was communicated to the attorney-in-fact before the father died.

On a motion for summary disposition pursuant to MCR 2.116(C)(10), the probate court ruled in favor of the two sons, concluding that the limited partnership's practice made transfer of ownership complete when the owner's intent was communicated. It also found that the decedent's intent was communicated to his attorney-in-fact before his death and that the attorney-in-fact directed the transfer before the decedent's death so that these communications successfully changed ownership to the sons.

The Court of Appeals reversed in an unpublished opinion.[1] The Court ruled that the power of attorney was effective until revoked by death. Because the instruction to transfer ownership of the shares had not been completed by the limited partnership's manager, the Court of Appeals determined that the shares remained in the decedent's name and were, therefore, part of the probate estate.

## II. Jurisdiction and Standard of Review

The probate court had jurisdiction to determine the title to property pursuant to MCL 700.22(1):[2]

> In addition to the jurisdiction conferred by section 21 and other laws, the probate court has concurrent legal and equitable jurisdiction of the following matters involving an estate of a decedent, ward, or trust:
>
> (a) To determine property rights and interests. . . .

See *Noble v McNerney*, 165 Mich App 586; 419 NW2d 424 (1988).

We review de novo the probate court's grant or denial of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

---

[1] Unpublished opinion per curiam, issued February 15, 2002 (Docket No. 227750).

[2] This section was replaced by MCL 700.1303 effective April 1, 2000. 1998 PA 386.

## III. The Probate Court Properly Decided
## an Uncontested Motion

The sons submitted evidence establishing their father's desire to have his shares transferred to them as well as evidence regarding the transfer practices of the limited partnership. Both the communication of the decedent's wish to have the shares transferred to his sons and the communication of his instruction to the racetrack's transfer agent occurred before the decedent died. These facts were not contested by Christina.[3] There was no genuine issue of material fact concerning the authority of Michael Capuzzi to make the transfer order, there was no good faith challenge by the transfer agent to Michael's authority, and there was no genuine issue of material fact about the typical manner in which the limited partnership usually handled these orders. Accordingly, the probate court properly concluded that the contested shares were not an asset of the estate and granted judgment for the sons as a matter of law.

Only this assessment of the probate court's ruling is necessary for the resolution of this case. However, the

---

[3] Under MCR 2.116(C)(10) and (G)(4), respondent had a duty to oppose the sons' motion by establishing a disputed issue of material fact. By Christina having failed to do so, the probate court was authorized by statute and court rule to rule in the sons' favor if they are entitled to judgment as a matter of law.

5

majority launches into an unnecessary analysis of the authority of agents operating under a power of attorney upon the death of the principal, the general obligations of third parties upon receipt of instructions of an agent, and other issues I think wholly irrelevant to the disposition of this case.

### IV. Contrary to the Majority view, a third party is not unqualifiedly "required" to honor a power of attorney

My disagreement with the majority is its overbroad and largely unsupported assertion that a third party is *required* to act in response to a directive from a person serving as an attorney-in-fact:

> However, when an agent has completed all necessary actions and all that is left is for a third party to act to complete the transaction, we hold that the principal's death has no effect on the validity of the transaction and does not relieve the requirement on the *third party* to act. [*Ante*, p 4.]

> When all necessary actions have been completed, just as the third party would be required to follow the directive of the principal, the third party is also required to follow the directive of the agent. [*Ante*, p 5.]

Although both statements are at a very general level accurate, they are unnuanced and overbroad. These statements are at odds with an established principle actually discussed in an unconnected fashion later by the majority: "[O]ur decision today does not preclude a third party from taking reasonable steps to ensure that an

6

agent's order stems from a proper power of attorney."
*Ante,* p 10.  The conclusion that an agent was authorized to
act on behalf of the principal *before* the principal's death
does not compel the conclusion that a third party is
*obligated* to respond in a particular fashion.[4]

It is common practice for financial institutions,
hospitals, and other businesses to ask customers to use a
power of attorney form created by that business.  And the
reason for such a request is obvious—the need to ensure
that one who purports to act for another under a power of
attorney is doing so with proper authority.  Generally, a
third party must exercise due diligence and due care to
ascertain the scope of authority.[5]  A third party who acts
in *reasonable* reliance on the apparent authority of an
agent is protected:

> A third party with whom the agent deals may
> rely on the appearance of authority only to the
> extent that such reliance is reasonable.  Blind
> reliance is incapable of giving rise to
> ostensible authority; reliance must be had in
> good faith and in the exercise of reasonable
> prudence.  [2A CJS, Agency, § 144, p 420.]

---

[4] Indeed, because all the agent's actions in this case
were completed before the death of the principal, it is
unclear why the majority devotes so much analysis to the
rules that apply when the principal dies before his agent
has completed all acts to effectuate the principal's
direction—a circumstance inapposite to the facts of this
case.

[5] 2A CJS, §§ 150-151, pp 426-429.

*Cowan v Sargent Mfg Co*[6] supports the principle that a third party has a right to inquire into the authority for a purported agent's commands. In *Cowan*, the defendant was a Michigan manufacturer of sickroom furniture who operated a sales showroom in New York. The defendant's New York manager ordered furniture from the plaintiff, a manufacturer of bedroom furniture, for delivery to friends in New York, purporting to act on behalf of the defendant. When the bills for the bedroom furniture went unpaid, the plaintiff sued, claiming that its agent had bound the company for the purchases.

The Supreme Court held that the company was not liable for the manager's purchases because he acted outside the scope of his authority. Had the manager bought jewelry or automobiles, it would have been clear that he was operating outside the scope of his agency. The purpose of the defendant's New York operations was to market its Michigan-made furniture, not to acquire furniture from other suppliers. Accordingly, the manager was operating outside the scope of his authority, and this Court held that the company was not liable for the agent's purchases. [7]

---

[6] 141 Mich 87, 91; 104 NW 377 (1905).

[7] 141 Mich 91.

Thus, contrary to the majority's statements, the longstanding principle in Michigan is that a third party who does *not* inquire sufficiently into an agent's authority does so at his own financial peril. That is why this Court must be cautious and avoid language that might imply a rigid duty or obligation for a third party to act.

I agree with the majority that former MCL 700.497[8] is not directly applicable here. Similarly, former MCL 700.495 is also not directly applicable.[9] Nonetheless, both sections show a legislative recognition of the role "good faith" can play—and the insecurities a third party might feel—by protecting a third party who acts in good faith.[10]

Our law permits—indeed encourages—the third party to satisfy himself that the purported agent is in fact authorized to act. Nonetheless, the issue in this case is not the third party's alleged "obligation" to act, because

---

[8] That section provided that a person who acted in good faith without knowledge of the death was protected, but it left open the question whether one who refuses to act because of knowledge of the death would likewise be protected.

[9] Former MCL 700.495 gave legislative recognition to durable powers of attorney.

[10] The majority cites MCL 700.5501 *et seq*. for the proposition that "[a] power of attorney provides the agent with all the rights and responsibilities of the principal as outlined in the agreement." *Ante*, pp 3-4. That statute, codified as the Uniform Durable Power of Attorney Act, was effective April 1, 2000, and, therefore, does not apply to this dispute, which arose in 1998.

9

the third party has not been named a party to this litigation. Rather, this is an action in probate court to determine the ownership of assets.

Accordingly, this case does not require the Court to issue a broad statement attempting to define for all purposes a third-party's obligation to obey (or disobey) instructions from a purported agent. For the reasons stated above, I concur in the majority's decision to reverse the Court of Appeals and reinstate the judgment of the probate court.

                              Robert P. Young, Jr.
                              Maura D. Corrigan
                              Clifford W. Taylor