YOUNG, J.
(concurring). I concur in the result reached by the majority because I believe that the probate court appropriately determined that the contested partnership shares belonged to the decedent’s sons rather than the estate. However, the majority reaches beyond the simple issue presented in this case: whether the probate court properly applied the principles of MCR 2.116(0(10) in resolving this property dispute in favor of the decedent’s sons. In reaching beyond what is essentially a simple standard of review question, the majority addresses other issues not squarely presented and blurs the distinctions between the obligations of an agent operating under a power of attorney and the obligations of a third party responding to the direction of that agent. Consequently, I write separately to provide an alternate rationale—one that I believe will reduce the risk of unintended consequences that I suspect the majority opinion may create.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
At issue is a petition in the probate court to determine ownership of shares in a limited partnership that owned a horse race track. Decedent owned those shares during his lifetime.
Two years before his death, Eugene T. Capuzzi had appointed his son, Michael, to be his attorney-in-fact under a durable power of attorney. He had instructed his son to transfer various assets to his wife and to a revocable trust. In addition, he had instructed Michael to transfer his shares in the racetrack to his sons Michael Capuzzi and Eugene T. Capuzzi, Jr.
*409 When the estate inventory was filed in probate court, the decedent’s daughter, respondent Christina Fisher, noticed that the racetrack shares were not included. She petitioned the court for the return of the assets to the estate, claiming that the racetrack shares were estate assets because the racetrack company had not completed the transfer of the shares before her father died. Her brothers filed a counter-petition, requesting that the probate court determine the proper ownership of the racetrack shares. Among other proofs, they submitted the affidavit of the executive manager of the limited partnership, who stated that the limited partnership’s general business practice with regard to share ownership was to transfer shares upon written or telephone communication directing a transfer. The sons also introduced evidence that the decedent desired the racetrack shares to be transferred to his sons and that this desire was communicated to Michael Capuzzi before the decedent died. It is not contested that the transfer order was communicated to the attorney-in-fact before the father died.
On a motion for summary disposition pursuant to MCR 2.116(0(10), the probate court ruled in favor of the two sons, concluding that the limited partnership’s practice made transfer of ownership complete when the owner’s intent was communicated. It also found that the decedent’s intent was communicated to his attorney-in-fact before his death and that the attorney-in-fact directed the transfer before the decedent’s death so that these communications successfully changed ownership to the sons.
The Court of Appeals reversed in an unpublished opinion.[1] The Court ruled that the power of attorney *410 was effective until revoked by death. Because the instruction to transfer ownership of the shares had not been completed by the limited partnership’s manager, the Court of Appeals determined that the shares remained in the decedent’s name and were, therefore, part of the probate estate.
II. JURISDICTION AND STANDARD OP REVIEW
The probate court had jurisdiction to determine the title to property pursuant to MCL 700.22(1) :[2]
In addition to the jurisdiction conferred by section 21 and other laws, the probate court has concurrent legal and equitable jurisdiction of the following matters involving an estate of a decedent, ward, or trust:
(a) To determine property rights and interests.
See Noble v McNerney, 165 Mich App 586; 419 NW2d 424 (1988).
We review de novo the probate court’s grant or denial of summary disposition. Spiek v Dep’t of Transportation, 456 Mich 331, 337; 572 NW2d 201 (1998).
III. THE PROBATE COURT PROPERLY DECIDED
AN UNCONTESTED MOTION
The sons submitted evidence establishing their father’s desire to have his shares transferred to them as well as evidence regarding the transfer practices of the limited partnership. Both the communication of the decedent’s wish to have the shares transferred to his sons and the communication of his instruction to the racetrack’s transfer agent occurred before the decedent *411 died. These facts were not contested by Christina.[3] There was no genuine issue of material fact concerning the authority of Michael Capuzzi to make the transfer order, there was no good faith challenge by the transfer agent to Michael’s authority, and there was no genuine issue of material fact about the typical manner in which the limited partnership usually handled these orders. Accordingly, the probate court properly concluded that the contested shares were not an asset of the estate and granted judgment for the sons as a matter of law.
Only this assessment of the probate court’s ruling is necessary for the resolution of this case. However, the majority launches into an unnecessary analysis of the authority of agents operating under a power of attorney upon the death of the principal, the general obligations of third parties upon receipt of instructions of an agent, and other issues I think wholly irrelevant to the disposition of this case.
IV CONTRARY TO THE MAJORITY VIEW A THIRD PARTY IS NOT UNQUALIFIEDLY “REQUIRED” TO HONOR A POWER OF ATTORNEY
My disagreement with the majority is its overbroad and largely unsupported assertion that a third party is required to act in response to a directive from a person serving as an attorney-in-fact:
However, when an agent has completed all necessary actions and all that is left is for a third party to act to complete the transaction, we hold that the principal’s death has no effect on the validity of the transaction and does not relieve the requirement on the third party to act. [Ante, p 403.]
*412 When all necessary actions have been completed, just as the third party would be required to follow the directive of the principal, the third party is also required to follow the directive of the agent. [Ante, p 403.]
Although both statements are at a very general level accurate, they are unnuanced and overbroad. These statements are at odds with an established principle actually discussed in an unconnected fashion later by the majority: “[0]ur decision today does not preclude a third party from taking reasonable steps to ensure that an agent’s order stems from a proper power of attorney.” Ante, p 407. The conclusion that an agent was authorized to act on behalf of the principal before the principal’s death does not compel the conclusion that a third party is obligated to respond in a particular fashion.[4]
It is common practice for financial institutions, hospitals, and other businesses to ask customers to use a power of attorney form created by that business. And the reason for such a request is obvious—the need to ensure that one who purports to act for another under a power of attorney is doing so with proper authority. Generally, a third party must exercise due diligence and due care to ascertain the scope of authority.[5]
[6]A third party who acts in reasonable reliance on the apparent authority of an agent is protected:
A third party with whom the agent deals may rely on the appearance of authority only to the extent that such reliance is reasonable. Blind reliance is incapable of giving *413 rise to ostensible authority; reliance must be had in good faith and in the exercise of reasonable prudence. [2A CJS, Agency, § 144, p 420.]
Cowan v Sargent Mfg Co[6] supports the principle that a third party has a right to inquire into the authority for a purported agent’s commands. In Cowan, the defendant was a Michigan manufacturer of sickroom furniture who operated a sales showroom in New York. The defendant’s New York manager ordered furniture from the plaintiff, a manufacturer of bedroom furniture, for delivery to friends in New York, purporting to act on behalf of the defendant. When the bills for the bedroom furniture went unpaid, the plaintiff sued, claiming that its agent had bound the company for the purchases.
The Supreme Court held that the company was not liable for the manager’s purchases because he acted outside the scope of his authority. Had the manager bought jewelry or automobiles, it would have been clear that he was operating outside the scope of his agency. The purpose of the defendant’s New York operations was to market its Michigan-made furniture, not to acquire furniture from other suppliers. Accordingly, the manager was operating outside the scope of his authority, and this Court held that the company was not liable for the agent’s purchases.[7]
Thus, contrary to the majority’s statements, the longstanding principle in Michigan is that a third party who does not inquire sufficiently into an agent’s authority does so at his own financial peril. That is why this Court must be cautious and avoid language that might imply a rigid duty or obligation for a third party to act.
*414 I agree with the majority that former MCL 700.497[8] is not directly applicable here. Similarly, former MCL 700.495 is also not directly applicable.[9] Nonetheless, both sections show a legislative recognition of the role “good faith” can play—and the insecurities a third party might feel—by protecting a third party who acts in good faith.[10]
Our law permits—indeed encourages—the third party to satisfy himself that the purported agent is in fact authorized to act. Nonetheless, the issue in this case is not the third party’s alleged “obligation” to act, because the third party has not been named a party to this litigation. Rather, this is an action in probate court to determine the ownership of assets.
Accordingly, this case does not require the Court to issue a broad statement attempting to define for all purposes a third-party’s obligation to obey (or disobey) instructions from a purported agent. For the reasons stated above, I concur in the majority’s decision to reverse the Court of Appeals and reinstate the judgment of the probate court.
Corrigan, C.J., and Taylor, J., concurred with Young, J.

 Unpublished opinion per curiam, issued February 15, 2002 (Docket No. 227750).

 This section was replaced by MCL 700.1303 effective April 1, 2000. 1998 PA 386.

 Under MCR 2.116(C)(10) and (G)(4), respondent had a duty to oppose the sons’ motion by establishing a disputed issue of material fact. By Christina having failed to do so, the probate court was authorized by statute and court rule to rule in the sons’ favor if they are entitled to judgment as a matter of law.

 Indeed, because all the agent’s actions in this case were completed before the death of the principal, it is unclear why the majority devotes so much analysis to the rules that apply when the principal dies before his agent has completed all acts to effectuate the principal’s direction—a circumstance inapposite to the facts of this case.

 2A CJS, Agency, §§ 150-151, pp 426-429.

 141 Mich 87, 91; 104 NW 377 (1905).

 141 Mich 91.

 That section provided that a person who acted in good faith without knowledge of the death was protected, but it left open the question whether one who refuses to act because of knowledge of the death would likewise be protected.

 Former MCL 700.495 gave legislative recognition to durable powers of attorney.

 The majority cites MCL 700.5501 et seq. for the proposition that “[a] power of attorney provides the agent with all the rights and responsibilities of the principal as outlined in the agreement.” Ante at 402. That statute, codified as the Uniform Durable Power of Attorney Act, was effective April 1, 2000, and, therefore, does not apply to this dispute, which arose in 1998.